BOWLING GREEN STORAGE & VAN CO. *v.* UNITED STATES (No. 838).[1]

TWENTY-YEAR CLAUSE, PARAGRAPH 717, TARIFF ACT OF 1909.

The importer here clearly limited himself in his protest to a claim under the 20-year clause, paragraph 717, tariff act of 1909, and the question now presented is whether that paragraph confers an exclusive and final jurisdiction upon the Secretary of the Treasury to determine a particular importation is or is not a work of art of a described kind. The Secretary has asserted no such power (Treasury Circular, T. D. 31263), and properly, for the intention in the statute seems manifestly to have been to confer upon that official authority to prescribe rules and regulations according to which all questions as to the age of works of art are to be determined by the ordinary tribunals having jurisdiction in customs cases.

## United States Court of Customs Appeals, May 27, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27613 (T. D. 32161).

[Reversed.]

*Hatch & Clute* (*Edward S. Hatch* and *Walter F. Welch* of counsel) for appellants.
*William L. Wemple*, Assistant Attorney General (*William K. Payne*, Deputy Assistant Attorney General, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
This case involves the construction of paragraph 717 of the act of 1909, which is as follows:

Works of art, including paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches, etchings and engravings, and sculptures, which are proved to the satisfaction of the Secretary of the Treasury under rules prescribed by him to have been in existence more than twenty years prior to the date of their importation, but the term "sculptures" as herein used shall be understood to include professional productions of sculptors only, whether round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal; and the word "painting," as used in this act, shall not be understood to include any article of utility nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings" and "engravings," as used in this act, shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools, and not such as are printed from plates or blocks etched or engraved by photochemical processes. Other works of art (except rugs and carpets), collections in illustration of the progress of the arts, works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

The importers claimed free admission of two classes of goods, one class consisting of works of art claimed to have been in existence more than 20 years and the other antiquities more than 100 years old. The goods were assessed for duty. Thereupon the importer filed a protest, which, so far as it invoked paragraph 717, reads as follows:

You will please take notice that we protest against your decision as to the rate and amount of duties to be paid on antiquities, etc., * * * and claim as reasons for

---

[1] Reported in T. D. 32588 (22 Treas. Dec., 994).

our objections thereto that the said merchandise is properly classifiable * * * under 717 as works of art and sculptures, which have been in existence more than 20 years prior to the date of their importation, the production of professional sculptors in marble, stone, etc.

On the return of the collector to this protest a commission was issued to take depositions in London and Paris, and interrogatories were drawn up. On October 18, 1911, the Government attorney moved to vacate the order made by the board allowing the issuance of a commission and to dismiss the protests for insufficiency in so far as they made claim under the 100-year clause of paragraph 717. The board held that the protestant had no right to proceed under paragraph 717 at all, on the ground, first, that the board had no jurisdiction over questions arising under the 20-year clause, and, secondly, that the protest was insufficient to support a claim under the 100-year clause. The order for the commission was therefore revoked, and, as the protestants had abandoned all other claims, the protest was overruled as to the additional claims and the case dismissed.

Considering first the question of whether the protest sufficiently raised the point as to the admissibility of these importations under the 100-year clause of paragraph 717, the claim of the importer is that, inasmuch as the protest refers to the importation as antiquities in the first clause, this is sufficient to apprise the collector that the claim is made under the 100-year clause.

It is said the protest not only claims on antiquities but claims under paragraph 717, which would necessarily bring it within the 100-year clause. This would be entitled to much force had the protest rested there. But it proceeds to state with specificness the objection, assigning reasons, as is required, for the objections, and those reasons, as stated, are that the goods are admissible under paragraph 717 "as works of art and sculptures which have been in existence more than twenty years prior to the date of their importation, the production of professional sculptors in marble, stone, etc." This we think is a clear limitation upon the recital in the first part of the protest, and limits the importer to the 20-year clause of the paragraph. See Sonneborn's Sons v. United States (3 Ct. Cust. Appls., 54; T. D. 32348); Bliven v. United States (1 Ct. Cust. Appls., 205; T. D. 31239); and Oelrichs v. United States (3 Ct. Cust. Appls., 232; T. D. 32541).

This brings us to a consideration of the question whether the Board of General Appraisers rightly held that the 20-year clause of paragraph 717 confers upon the Secretary of the Treasury exclusive and final jurisdiction to determine whether a particular importation is a work of art within the meaning of that paragraph. It is not contended by the importer that judicial and final authority might not lawfully be conferred upon the Secretary of the Treasury. But it is contended that such is not the intention of the language found in

the paragraph, which limits the importation of works of art to those "which are proved to the satisfaction of the Secretary of the Treasury under rules prescribed by him to have been in existence more than 20 years prior to the date of their importation." The board appears to have placed a literal construction upon this language, under which view the Secretary of the Treasury would be required to act upon each importation as it was tendered. It may be said that if such be the proper construction, it imposes upon the Secretary of the Treasury a very unusual burden. In practical administration such a provision would be difficult.

This construction seems not to have been adopted by the Secretary of the Treasury, for in Treasury Circular (T. D. 31263) under date of February 1, 1911, in referring to the 20-year clause for works of art, etc., complete and full regulations are provided. A form of affidavit required by the owner and declaration by foreign shipper are provided for, and the order upon that branch concludes:

The collector of customs shall transmit all certificates bearing on the age of such works of art to the appraising officer for his information and guidance. A careful examination thereof shall be made by the appraising officer to ascertain whether the same are works of art within the meaning of said provision of law, and, also, whether the same were, in fact, produced more than 20 years prior to their importation, and his findings in such regard shall be clearly stated in his return upon the invoice. The collector shall thereupon liquidate the entry without submitting it to the department for instructions.

After dealing with the subject of artistic antiquities, the circular concludes:

Any importer who is dissatisfied with the action of the collector in assessing duty on any article claimed to be entitled to free entry under the provisions of said paragraph 717 may file with the collector a written protest within 15 days after the liquidation of the entry, as provided in subsection 14 of section 28 of the tariff act of August 5, 1909.

The board was of the opinion that it was not within the power of the Secretary of the Treasury to confer by such a provision as last quoted appellate jurisdiction in the board, which had no other sanction of law. This view is unassailable if the construction be adopted of the first paragraph, which confers upon the Secretary of the Treasury final judicial authority to determine in each individual case the right to free entry under the 20-year clause.

But, as pointed out, this appears not to have been the construction placed upon this provision by the Secretary of the Treasury himself, and we think that a more reasonable construction is that, by the language employed, it was the intention of Congress to confer upon the Secretary of the Treasury the authority to establish rules and regulations which should be prescribed by him to establish the fact that the goods in question had been in existence more than 20 years. This does no violence to the language employed. The Secretary of

the Treasury, as is well known, acts usually in customs matters through the local assessing officers, the collector, and appraisers, and the language of this paragraph should be construed in connection with that well-known fact and with the other provisions of the administrative act.

A case somewhat analogous to this is the early case of Williams v. United States (42 U. S., 290). In that case the court had under consideration the provision of the act of January 31, 1823, which provided—

That, from and after the passing of this act, no advance of public money shall be made in any case whatever; but in all cases of contracts for the performance of any service, or the delivery of articles of any description, for the use of the United States, payment shall not exceed the value of the service rendered, or of the articles delivered previously to such payment: *Provided*, That it shall be lawful, under the especial direction of the President of the United States, to make such advances to the disbursing officers of the Government as may be necessary to the faithful and prompt discharge of their respective duties, and to the fulfillment of the public engagements.

The court in construing this section said:

It is contended for the plaintiff in error that the act of Congress of January 31, 1823, expressly prohibits the advancing of public money in any case whatsoever, except under the special direction of the President, to the disbursing officers of the Government for the faithful and prompt discharge of their public duties and to the fulfillment of the public faith; and it is insisted upon as the correct interpretation of this statute, that the power thereby vested to make advances for the public service is not one appertaining to the office of President, but is an authority strictly personal and ministerial, to be exercised in every instance only by the individual himself, by his own hand, and never in any respect to be delegated. Such an interpretation of the law this court can by no means admit. While it has been doubtless the object of Congress to secure economy and regularity in public disbursements, and for that end to limit, as far as was proper, the discretion of subordinate agents over the public money, it never can be reasonable to ascribe to them a conduct which must defeat every beneficial end they could have in view and render the Government an absolutely impracticable machine. The President's duty in general requires his superintendence of the administration; yet this duty can not require of him to become the administrative officer of every department and bureau, or to perform in person the numerous details incident to services which, nevertheless, he is, in a correct sense, by the Constitution and laws required and expected to perform * * *. If it be asked, How then shall the provisions and the purposes of the statute be fulfilled, the answer is obvious and satisfies at once the meaning of the law and the public exigencies. Average estimates may be formed of the expenses incident to the courts, and instructions may be given by the President to the Secretary of the Treasury to make advances from time to time, either upon the basis of those estimates or upon statements or requisitions made by the marshals themselves, showing the necessity of advances to meet the public service. And this plain and only feasible mode of complying with the law appears to have been adopted and to have become the settled usage of the Government, as is shown by the testimony of Asbury Dickins, admitted by the parties to be received as if taken upon oath.

So, in this case, the inconvenience of performance by the Secretary of the Treasury of the duty of examining in detail every proposed

importation of works of art claimed to have been in existence more than 20 years would be so great as to call for such a construction of the statute as would impose this duty only when no other reasonable construction is open.

Nor was the Secretary's construction of the act, as evidenced by his order above cited, without authority of precedent. Very similar language to that employed in the present statute had had interpretation in the department, and also implied judicial recognition before this statute.

By section 2505 of the Revised Statutes it was provided, among other things, that—

Animals, alive, specially imported for breeding purposes from beyond the seas, shall be admitted free of duty, *upon proof thereof satisfactory to the Secretary of the Treasury, and under such regulations as he may prescribe.*

The Secretary of the Treasury, by article 383 of the Customs Regulations, provided that before the collector admit such animals free he must "be satisfied that the animals are of superior stock, adapted to improving the breed in the United States," thus treating the language there employed, very similar, as will be seen, to that in the present statute, as authorizing rules and regulations for the determination by the collectors of customs in the various ports of the question of whether the animals were imported for the purpose stated in the statute.

In the case of Morrill *v.* Jones (106 U. S., 466) it appeared that the plaintiff had imported stock for breeding purposes and the collector, although recognizing this fact, demanded duties because he was not satisfied that the animals were of superior stock. The duties were paid under protest and suit brought to recover. Neither party to the litigation made the point that proof to the satisfaction of the Secretary of the Treasury meant evidence to be adduced before him in the particular case, but the case was determined upon other grounds, namely, that the regulations had placed another limitation upon the importation of the stock by requiring that the animals imported should be of superior stock.

This departmental construction given to language so similar to that employed in the present case is most persuasive in determining the intent of Congress as expressed in the present act.

We think the construction adopted by the Secretary of the Treasury is the true one, and that the purpose was to authorize him to provide by such rules and regulations the character of proof required to show the facts requisite to admit to duty; and, this being so, those rules would be rules to govern the collector and appraisers in the performance of their usual duties at the port of entry.

That the importer is entitled to pursue either the one course or the other—that is, to have the judgment of the Secretary of the

Treasury or his assistants in every case or to proceed in the regular channels—is too apparent to require extended discussion. The importer can not be left without remedy if the Secretary instructs his collectors to submit no more papers to him. See upon this point Campbell *v.* United States (107 U. S., 407) and the cases cited and Railroad Co. *v.* Smith (76 U. S., 95).

The case of Dunlap *v.* United States (173 U. S., 65) is cited in support of the claim that if the Secretary of the Treasury fails to do what the law directs by the section here under consideration—that is (according to the Government's contention), to take means to ascertain whether an importation is within the terms of the act or to prescribe rules and regulations for presenting the question to himself—the importer is without remedy.

The case cited involved the construction of the act of August 28, 1894, reading as follows:

> Any manufacturer finding it necessary to use alcohol in the arts, or in any medicinal or other like compound, may use the same under regulations to be prescribed by the Secretary of the Treasury, and on satisfying the collector of internal revenue for the district wherein he resides or carries on business that he has complied with such regulations and has used such alcohol therein, and exhibiting and delivering up the stamps which show that a tax has been paid thereon, shall be entitled to receive from the Treasurer of the United States a rebate or repayment of the tax so paid.

The majority of the court, it is true, held by that case that the act of prescribing regulations by the Secretary of the Treasury was a necessary element to entitle the plaintiff to recover in an action against the United States. But the reasoning upon which the judgment is based clearly differentiates that case from the present. In the course of the opinion the court said:

> Since, as counsel for Government argue, the peculiar nature of alcohol itself, the materials capable of being distilled being plentiful, the process of distillation easy, and the profit, if the tax were evaded, necessarily great, had led in the course of 30 years to a minute and stringent system of laws, aimed at protecting the Government in every particular, it seems clear that when Congress undertook to provide for refunding the tax on alcohol when used in the arts, it manifestly regarded adequate regulations to prevent loss through fraudulent claims as absolutely an essential prerequisite, and may reasonably be held to have left it to the Secretary to determine *whether or not* such regulations could be framed, and if so, whether *further legislation would be required.* It is true that the right to the rebate was derived from the statute, but it was the statute itself which postponed the existence of the right until the Secretary had prescribed regulations *if he found it practicable to do so.*

The court proceeds to consider the debates in Congress and to point out that when this section was considered in the Senate it was said that—

> If the Secretary of the Treasury and the Commissioner of Internal Revenue think they can not adopt any regulations which will prevent fraud, then nothing will be

done under it; but if they conclude they can adopt such regulations as will prevent fraud in the use of alcohol in the manufactures and the arts, then there will be relief under it.

It is further pointed out by the court that at the first meeting of Congress after this provision was enacted the Secretary reported the draft of regulations which he desired to prescribe, stating that their enforcement would cost half a million dollars annually, for which no appropriation was available, and that therefore he could not execute the section until Congress took further action. With this knowledge before it, Congress adjourned without taking action.

The court, after further discussion, say:

Nothing could have been further from the mind of Congress than that repayment must be made on the unregulated use of alcohol in the arts, if in the judgment of the department, as the matter stood, such use could not be regulated.

The case must be recognized as near the border line. This is not only manifest by the fact that four justices dissented, but by the fact that the court resorted to the debates in Congress in aid of the interpretation adopted by the majority.

We think the present statute is not open to a construction which would leave it entirely to the discretion of the Secretary of the Treasury whether he would furnish means of satisfying himself, were he the only tribunal, or prescribe rules for proof in a manner satisfactory to himself if, as we hold, the correct interpretation of the statute permits this. The statute affirmatively admits these articles free of duty. The importer is entitled to the benefit of a liberal construction of the statute in his favor, and there are no such considerations as existed in the Dunlap case which militate against a construction which makes for the right of the importer to have action taken by the Secretary of the Treasury which is definitely prescribed by the section. A construction which would leave to the Secretary of the Treasury the arbitrary power of acting or not acting in a given case or of prescribing or not prescribing rules to govern cases generally is wholly inconsistent with the purpose of the act and shocks the sense of justice as well. But for the reasons pointed out, we think the Secretary has placed the correct construction upon this statute and has prescribed rules and regulations which for the future will furnish a correct guide.

We construe the law as authorizing a determination by the collector, as in ordinary cases, under rules and regulations to be prescribed by the Secretary of the Treasury. It follows that a right of appeal from such determination exists under the authority of subsection 29 of section 28 of the act of 1909.

The decree of the Board of General Appraisers is *reversed* and the cause remanded with directions to reinstate the commission.