## UNITED STATES *v.* TOWER & SONS (No. 2767)[1]

REVIEW OF SECRETARY'S ACTION UNDER ANTIDUMPING ACT, 1921—DELEGATED POWER MAY NOT BE REDELEGATED.

Section 201 (a), emergency tariff act of 1921, a portion of the "antidumping act, 1921," directs the Secretary of the Treasury, when he finds that an industry of the United States is threatened by the sale of imported merchandise at less than its fair value, to make public description of such merchandise "in such detail as may be necessary for the guidance of appraising officers." While the action of the Secretary, in conformity with this section may not be reviewable, it is the courts' duty to determine whether or not his action was in conformity with it. His publication of such finding as to. "rugs from Canada," referring to "the special agent in charge at New York" for "further description of this particular merchandise," does not conform to the section, in that it is an attempt by the Secretary to delegate to the special agent the duty imposed by Congress upon him—*Delegata potestas non potest delegari.* Imposition of antidumping duty and of consequent additional duty for undervaluation was therefore void.

### United States Court of Customs Appeals, March 9, 1927

APPEAL from Board of United States General Appraisers, G. A. 9099, T. D. 41409

[Affirmed.]

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Albert McC. Barnes, jr.,* and *Samuel M. Richardson* of counsel) for appellee.

[Oral argument December 15, 1926, by Mr. Carter and Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal is from a judgment of the Board of United States General Appraisers (now United States Customs Court), sustaining a protest of the appellees claiming the re-reappraisement of the merchandise, carpets and rugs, imported from Canada, to be illegal and void.

---

[1] T. D. 42058.

The goods involved in this case are only a part of a very large purchase made from Canada, different portions of which were shipped to a great number of dealers throughout the United States and entered at several different ports. The shipment involved here was entered at the subport of Black Rock, N. Y., subsequent to the passage of the emergency tariff act of May 27, 1921, and prior to the passage of the tariff act of September 21, 1922. The chief question raised is the application of the antidumping act provisions of the emergency tariff act, as amending the tariff act of October 3, 1913.

The carpet and rug mills in America were closed as a result of a strike in January, 1921. American dealers were informed by American manufacturers that they were unable to deliver any merchandise of the character involved in this appeal. A Mr. Fedderly contracted with the Toronto Rug & Carpet Co. for the sale and export of rugs to the United States direct to various dealers at 23.3 per centum below the Canadian market value, but which price gave the Canadian manufacturer a profit, due to the large quantity sold—about $350,000 worth. The evidence discloses that the sale for exportation at a less price than the Canadian market value was on account of the large quantity contracted for, and that the goods arrived in this country at a time when there was no comparable merchandise, of consequence, being manufactured in the United States.

Upon the arrival of the shipment in question the appraising officer withheld his report to the collector and gave notice to the Secretary of the Treasury in accordance with section 201 (b) of the antidumping act, supra, which reads as follows:

SEC. 201. * * * (b) Whenever, in the case of any imported merchandise of a class or kind as to which the Secretary has not so made public a finding, the appraiser or person acting as appraiser has reason to believe or suspect, from the invoice or other papers or from information presented to him, that the purchase price is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the cost of production) he shall forthwith, under regulations prescribed by the Secretary, notify the Secretary of such fact and withhold his appraisement report to the collector as to such merchandise until the further order of the Secretary, or until the Secretary has made public a finding as provided in subdivision (a) in regard to such merchandise.

On March 6, 1922, in T. D. 39032, 41 Treas. Dec. 121, the Secretary of the Treasury published a finding of dumping under the provisions of section 201 (a) of said antidumping act, which reads as follows:

SEC. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or

elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, *together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.*   (Italics ours.)

The published finding of the Treasury Department as published in 41 Treas. Dec. 121 is as follows:

TREASURY DEPARTMENT, *March 6, 1922.*
To Collectors of Customs and Others Concerned:
Section 201 (a) of the antidumping act of 1921 provides as follows:

That whenever the Secretary of the Treasury (hereinafter in this act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such. class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

After due investigation I find that the rug-making industry in the United States is being or is likely to be injured by reason of the importation into the United States of rugs from Canada, and that such merchandise is sold or is likely to be sold in the United States at less than its fair value.

For any further description of this particular merchandise, appraising officers will communicate with the special agent in charge at New York.
   (106085.)                          ELMER DOVER, *Assistant Secretary.*

Since the right of Elmer Dover, Assistant Secretary, to issue the finding is questioned in this case, it is proper to add that, in this court, without objection, a certified copy of the original finding was presented to this court, which is in all respects identical to the one published in the Treasury decisions cited above with the exception that above the name of "Elmer Dover" are the words "By direction of the Secretary."

After the publication of T. D. 39032, *supra,* the appraising officer took action upon the invoices under the provisions of section 209 of said antidumping act, which reads as follows:

SEC. 209. That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

In the trials below the legality of the appraisement, which involved the kind of values to be taken, and the legality of the action of the appraising officers, in several respects, was warmly contested, which

acts, in view of the conclusions reached herein, are not material. The appraising officers reported the foreign market value on the date of exportation to be the entered value described in the invoices under the heading: "The fair market value for home consumption * * *."

The importers appealed to reappraisement and the single general appraiser affirmed the entered value. Appeal, then, was taken by the importers to the board of three general appraisers and the board of three made the following finding:

To unit invoice prices add 22⅜%, add packing and 1½% Canadian sales tax.

The collector liquidated the entries, and in so doing found that the final appraised values exceeded the entered values by 1 per centum and assessed an additional duty of 1 per centum. The collector also, having in mind T. D. 39032, assessed a special dumping duty evidently intended to be equal to the difference between the purchase price and the foreign market value on the date of purchase. The importers protested against the assessment of the special dumping duties, claiming, among other things, that the reappraisement and the re-reappraisement were illegal, and that the special dumping duty was improperly assessed.

The Board of United States General Appraisers (now United States Customs Court) sustained the protest of the importers in three separate opinions. General Appraiser McClelland in writing the opinion of the board concluded, among other things, that there was no warrant for the assessment of dumping duties, for the reason that the Treasury decision (39071), referred to in the special return of the appraiser as justification for his action, did not relate to rugs and carpets, but wholly to "wheat flour." He also was of the opinion that, since the merchandise was imported before the act of September 21, 1922, was enacted, the board was without jurisdiction to proceed to reappraisement of the merchandise and, further, that the board's finding of the value was illegal and void in so far as the Government had taken no appeal to reappraisement, and that the values found were higher than those found by the single general appraiser.

General Appraiser Sullivan concurred on the sole ground that the judgment as to the value of the merchandise rendered by the appraiser, single general appraiser, and Board of General Appraisers as to the amount of dumping duty, was void. A number of reasons for the views entertained were set out, among them the absence of samples before the re-reappraising tribunals and the failure of the customs officials to designate and retain them.

General Apprasier Brown concurred in the conclusion reached by General Appraisers McClelland and Sullivan upon the theory that the dumping act required the finding of two different values, upon

the difference between which dumping duty is to be calculated upon liquidation, and that, since only one value was found, there was nothing upon which to predicate the assessment of dumping duty. He also found that the levying of additional duties was illegal.

The Government has appealed from the judgment of the Board of United States General Appraisers (now United States Customs Court) to this court, and both sides have presented numerous close and interesting questions.

The Government insists that the action of the Board of United States General Appraisers (now United States Customs Court), while reviewing the action of the single general appraiser, was in conformity with law and, therefore, proper, while the importers urge, among other things: (1) That the antidumping law is unconstitutional; (2) that no proper finding was ever made subjecting the merchandise involved to a dumping duty; (3) that the appraisement under the antidumping act, the reappraisement, and the re-reappraisement were void because of the absence of samples; (4) that the appraisements were void for the failure to comply with section 2901 of the Revised Statutes respecting the designation and retention of samples; (5) that the collector of customs has no right to assess and collect a penalty except in accordance with the judgment of a court of competent jurisdiction; (6) that the Board of United States General Appraisers and this court have no jurisdiction to confirm a liquidation involving antidumping duties; (7) that no allowance for quantity was made in determining the foreign market value and that the statute authorizes such allowance; (8) that the Secretary of the Treasury has not so exercised a statutory duty as to warrant the imposition of a special dumping duty in so far as the antidumping finding published in T. D. 39032, *supra*, does not purport to be the action of the Secretary but is the action of Elmer Dover, Assistant Secretary; (9) that if the action of Elmer Dover, Assistant Secretary, can be regarded as the action of the Secretary, the finding of the Secretary is not in accordance with the authority granted in section 201 (a) in so far as he has not described the class or kind of merchandise to which it (antidumping finding), applies in such detail as was necessary for the guidance of the appraising officer, in so far as the Secretary's finding having named "rugs from Canada" limits and restricts the same by the following additional words: "For any further description of this particular merchandise, appraising officers will communicate with the special agent in charge at New York."

We approach the last question first. If the contention of the importers is correct, that the finding of the Secretary of the Treasury did not conform to the requirements of the statute sufficiently to make valid the acts of the customs administrative officers under it,

then the judgment of the Board of United States General Appraisers must be affirmed and it will be unnecessary to consider any other of the interesting questions raised.

Section 201 (a) of the antidumping act, *supra*, vests with the Secretary of the Treasury the power of investigation and of finding the effects of dumping in America and requires him to make such finding public to the extent he deems necessary together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of appraising officers. Assuming without deciding that T. D. 39032, *supra*, was properly executed and promulgated by the Secretary of the Treasury, did he comply with the statute in describing the class or kind of merchandise to which his finding applied in such detail as was necessary for the guidance of the appraising officers?

It will be noted that his finding, as published, applied to "rugs from Canada." (It is interesting to note that the importation in this case consists of carpets and rugs.) The particular description of the merchandise which appraising officers were presumed to have and which the Secretary's finding shows was necessary, was not set out in the finding, but the appraising officers were directed to go to "the special agent in charge at New York." The finding does not indicate whether the special agent had a list of described merchandise prepared by the Secretary; neither does it suggest that the special agent, by virtue of information and knowledge in his possession, would point out the particular merchandise to which the Secretary's finding should apply.

We do not think the Secretary had the authority to delegate to a special agent the right to designate the kind or class of merchandise to which the antidumping duty should apply. Congress intrusted to the Secretary the responsible duty of designating certain imported merchandise as being subject to such duties. Since it imposed this responsible duty on the Secretary, he is without power to delegate it to a special agent. The facts here suggest the necessity for the application of the maxim *delegata potestas non potest delegari*—a delegated authority can not be redelegated. Corpus Juris, vol. 18, p. 471. This principle of law, which is ordinarily applied to the relationship of principal and agent in commercial affairs, also applies in cases like the one at bar, where the delegated power involves the exercise of discretion. Here Congress delegated to a high executive officer the responsible duties of making an investigation, determining the facts, and promulgating the same, in reference to a very important financial matter, and for him in turn to redelegate the same is a failure to comply with the mandate of the legislature. *Blair* v. *City of Waco*, 75 Fed. 800; *City of New Orleans* v. *Sanford*, 137 La. 628 69 So. 35; *MacMillan* v. *United States*, 11 Ct. Cust. Appls. 466; *Waddell* v. *United States*, 13 Ct. Cust. Appls. 424.

If the Secretary of the Treasury had said " all rugs from Canada" we would have a different question before us, but in the case at bar he referred to "rugs from Canada" and left the description of the particular merchandise to the special agent. The necessary implication from the language used is that some rugs from Canada might not be subject to such duty, since if all rugs from Canada were to be subjected to such duty it was not necessary for the appraising officers to see the special agent. Appraising officers, therefore, in performing their duties under the finding, could not perform under the act of the Secretary but must be limited to the kind and description of merchandise which the special agent chooses to indicate. The statute under consideration does not by express terms or by fair implication authorize the delegation of such discretionary powers.

It follows that all acts of the customs officials growing out of the attempted levying of antidumping duties were invalid and void. Since the single general appraiser sustained the entered value, the value found by him can not exceed "the value declared in the entry," and no additional duties, under section 489, could be properly levied.

The question is raised that the Board of United States General Appraisers and this court have no jurisdiction to review the action of the Secretary of the Treasury in the performance of his duties under section 201 (a), *supra*. It is conceded by both parties that the duty of making the finding and describing the merchandise is a duty that Congress has solely intrusted to the Secretary of the Treasury and that his judgment as to the class and kind of merchandise and as to the facts upon which his finding is based, is not reviewable by any judicial tribunal, since no provision for review is made by Congress. *Kurz & Co. (Inc.) et al.* v. *United States,* 13 Ct. Cust. Appls. 527, and cases cited therein.

The correctness of the Secretary's action in determining that rugs from Canada were being sold or were likely to be sold in the United States at less than their fair value, and that the rug-making industry in the United States was being or was likely to be injured, by reason of this fact is not before us. This appeal involves the levying of antidumping duties and additional duties based upon the finding of the Secretary under the antidumping statute. It also involves the finding of certain values prescribed by the antidumping act.

The validity of the action of the customs officials must necessarily depend upon the validity of the action of the Secretary of the Treasury. If his acts are invalid and void no valid assessment of dumping duties or additional duties growing out of the levying of dumping duties can be based thereon. We are not concerned with how well the Secretary performs those duties delegated to him as long as he performs within the limitations prescribed by the law. When, however,

an officer to whom Congress has delegated certain duties either steps beyond the limits of the delegation or fails to comply with the terms of the delegation, then the courts are concerned when called upon to determine the legality of the acts of the customs officials, when performed by reason of such delegated authority. It is needless to discuss authorities. The following citations support the views expressed: *Bowling Green Storage & Van Co.* v. *United States*, 3 Ct. Cust. Appls. 309; *Mills & Gibb* v. *United States*, 8 Ct. Cust. Appls. 31; *United States* v. *Passavant*, 169 U. S. 16, 21; *Morrill* v. *Jones*, 106 U. S. 466.

The judgment of the Board of United States General Appraisers (now United States Customs Court) is *affirmed*.

HATFIELD, J., concurs in the conclusion.