Waterman Steamship Corp. *v.* United States (No. 4385)[1]

[1] C. A. D. 223.

120

*Harry F. Stiles, Jr.* (*Deutsch, Kerrigan & Stiles* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument October 6, 1942, by Mr. Harry F. Stiles, Jr., and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, dismissing appellant's protest and holding that the court had no jurisdiction to review the action of the Secretary of the Treasury refusing to remit or refund a customs duty of 50 per centum of the cost of certain repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in foreign trade.

The issues presented involve the construction of section 466 of the Tariff Act of 1930. The provisions in question read:

SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. For the purposes of this section, compensation paid to members of the regular crew of such vessel in connection with the installation of any such equipments or any part thereof, or the making of repairs, in a foreign country, shall not be included in the cost of such equipment or part thereof, or of such repairs.

"SEC. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; or

"(2) That such equipments or parts thereof or repair parts or materials, were manufactured or produced in the United States, and the labor necessary to install such equipments or to make such repairs was performed by residents of the United States, or by members of the regular crew of such vessel,

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessels shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this and the preceding sections, and the duties accruing thereon duly paid; and if such owner or master shall refuse to take such oath, or take it falsely, the vessel shall be seized and forfeited."

It appears from the record that the steamship *LaSalle*, owned by the appellant corporation, while on a voyage to Osaka, Japan, developed engine trouble and certain repairs on the condenser tubes were made in Osaka and again in Kobe, Japan. At the time of the ship's arrival at the port of Honolulu on its return voyage, a report was made to the collector at that port of the cost of such repairs by entry No. V–33, dated January 24, 1941, and an application was made through the collector to the Commissioner of Customs for remission of the duty on the cost of such repairs. On February 20, 1941, the Commissioner of Customs refused, by letter, to remit the duty on the ground that there was no showing that the repairs covered by the entry were occasioned by stress of weather or other casualty encountered on the voyage. Thereafter, on April 22, 1941, appellant addressed a communication to the Collector of Customs at the port of Honolulu, requesting reconsideration of its application. On April 30, 1941, the Collector of Customs advised appellant that, in accordance with instructions issued by the Commissioner of Customs under date of February 20, 1941, duty, amounting to 50 per centum of the cost of the ship's repairs, had been assessed and the entry liquidated on April 23, 1941, and that such liquidation would become final unless a protest was filed by appellant within 60 days from that date; that appellant might accompany its protest with a letter requesting further consideration by the Commissioner of Customs of appellant's application; that the duty amounted to $4,918.50, which, it was stated, had to be paid before any action would be taken on appellant's protest; and that in the event the Commissioner of Customs again denied appellant's application, the protest would be forwarded to the United States Customs Court for decision. On May 1, 1941, appellant paid the duty assessed and, on May 19, 1941, filed its protest. Thereafter,

on July 19, 1941, W. R. Johnson, Commissioner of Customs, in a letter addressed to the Acting Collector of Customs at the port of Honolulu, again rejected appellant's application for remission of the duty assessed on the ground that the facts presented were not sufficient to warrant a holding that the repairs in question were occasioned by stress of weather or other casualty encountered on the voyage.

Appellant does not contend in its protest that the collector erred in assessing the expenses of the repairs made in Japan at 50 per centum of the cost thereof, as required by the provisions of section 3114, which is a part of section 466, *supra*, or that the amount so assessed was excessive. On the contrary, the protest is an appeal, as stated therein, "for remission of duty on vessel repair entry no. V–33, dated January 24, 1941, Honolulu, Hawaii, and liquidated on April 23, 1941." A request is also made that the protest "be reviewed due to the fact that the Master, R. Perry, was on his first foreign voyage for our Corporation as Master, and was not familiar with the filing of a proper application for remission of duty. The Master did not file any extract of log showing rough weather encountered, and did not explain fully all of the circumstances relative to this case." Reference is made in the protest to the letter of February 20, 1941 from the Commissioner of Customs to the Collector of Customs at the port of Honolulu denying appellant's application for the remission of duties on the ground that no showing had been made in appellant's application "that the repairs covered by the entry were occasioned by stress of weather or other casualty encountered on the voyage," and the statement is made in the protest that appellant sincerely believes that the "failure of the condenser tubes was a casualty, and the repairs of same was a necessity for the vessel to continue her voyage in a seaworthy condition."

On the trial below, evidence was introduced by appellant. During the submission of such evidence, counsel for appellee moved to dismiss the protest on the ground that it was directed against the action of the Secretary of the Treasury refusing to grant appellant's application for the remission of the duty assessed by the collector; that section 3115, which is a part of section 466, *supra*, conferred upon the Secretary of the Treasury exclusive and final jurisdiction to determine whether or not duties assessed under section 3114, *supra*, should be remitted or refunded; and that, therefore, the court was without jurisdiction to review the action of the Secretary.

In its decision sustaining appellee's motion to dismiss appellant's protest, the court held that, by virtue of the provisions of section 3115, *supra*, the Secretary of the Treasury had exclusive and final jurisdiction to determine whether or not duties assessed under section 3114, *supra*, should be remitted or refunded, and that his decision was not reviewable by that court. In support of its holding, the court

cited the case of *Lykes Bros. (Ripley Steamship Co.)* v. *United States*, C. D. 518, wherein it was held, on the authority of the decisions in the cases of *Mills & Gibb* v. *United States*, 8 Ct. Cust. Appls. 31, T. D. 37164; *Sullivan* v. *United States*, Abstract 46618, 44 Treas. Dec. 493; *Hammermill Paper Co.* v. *United States*, T. D. 41147, 48 Treas. Dec. 269; and *J. W. V. Berry* v. *United States*, Abstract 10939, 57 Treas. Dec. 1067, that—

exclusive jurisdiction was conferred upon the Secretary of the Treasury, under sections 3114 and 3115 of the Revised Statutes, as amended by section 466, Tariff Act of 1930, to authorize the remission of duties levied upon repairs made to American vessels in a foreign port, which were necessitated by stress of weather or other casualty, upon "good and sufficient evidence" furnished by the master or owner of such vessels, and that an appeal was not provided upon the Secretary's refusal to direct a refund in the exercise of such authority, or for a review of the evidence upon which the secretary may have acted in such a case.

It is contended here by counsel for appellant that section 3115, *supra*, was not intended by the Congress to confer upon the Secretary of the Treasury exclusive and final authority to determine whether or not duties assessed under section 3114, *supra*, should be remitted or refunded; that by article 128 of the Customs Regulations, 1937, the Secretary of the Treasury has established a complete procedural system for the remission of duties under section 3115, *supra*, and has delegated to the Commissioner of Customs the authority to determine whether or not duties assessed under section 3114, *supra*, should be remitted or refunded; that, as such regulations provide that "Inasmuch as the liquidation of an unprotested entry is final at the expiration of 60 days after the date of liquidation, applications for relief received after that time cannot be considered in the absence of a timely protest," the Secretary of the Treasury was of opinion that the statute of limitations contained in the protest section (section 514 of the Tariff Act of 1930) was applicable; and that he, therefore, must have construed the provisions of section 3115, *supra*, to mean that it was not the intention of the Congress to confer upon the Secretary exclusive and final authority to determine whether or not the duties assessed under section 3114, *supra*, should be remitted or refunded. In support of their contentions, counsel cite the case of *Bowling Green Storage & Van Co.* v. *United States*, 3 Ct. Cust. Appls. 309, T. D. 32588, wherein it was held that the free list provision for "Works of art, * * * which are proved to the satisfaction of the Secretary of the Treasury under rules prescribed by him to have been in existence more than twenty years prior to the date of their importation," contained in paragraph 717 of the Tariff Act of 1909, was not intended by the Congress to confer upon the Secretary of the Treasury exclusive and final jurisdiction to determine whether a particular importation was a work of art within the meaning of that paragraph. In so holding, the court

pointed out that the Secretary of the Treasury had properly construed the language there involved to mean that it was the intention of the Congress to confer upon the Secretary "The authority to establish rules and regulations which should be prescribed by him to establish the fact that the goods in question [works of art] had been in existence more than 20 years," and stated that "the inconvenience of performance by the Secretary of the Treasury of the duty of examining in detail every proposed importation of works of art claimed to have been in existence more than 20 years would be so great as to call for such a construction of the statute as would impose this duty only when no other reasonable construction is open."

Counsel also rely upon the decision of this court in the case of *United States* v. *Woodward-Newhouse Co.*, 11 Ct. Cust. Appls. 284, T. D. 39100, wherein it was held, among other things, that the provision contained in paragraph Y of section III of the Tariff Act of 1913, that "the Secretary of the Treasury is hereby authorized to correct manifest clerical errors in any entry or liquidation for or against the United States, at any time within one year of the date of such entry, but not afterwards," was not intended to confer upon the Secretary exclusive and final jurisdiction to correct manifest clerical errors in entries or liquidations; that, upon the filing of proper protests, jurisdiction was vested in the Board of General Appraisers (now the United States Customs Court), and, on appeal, in this court, to finally adjudicate such issues.

Other cases are cited by counsel for appellant in support of their views that the Congress did not intend by the provisions of section 3115, *supra*, to confer exclusive and final authority upon the Secretary of the Treasury to determine whether or not duties assessed by collectors under the provisions of section 3114, *supra*, should be remitted or refunded. We deem it unnecessary, however, to review those authorities as the issues here presented must be determined from the provisions contained in section 3115, *supra*.

In the case of *Mills & Gibb* v. *United States*, 8 Ct. Cust. Appls. 31, T. D. 37164, it was held that the provision contained in paragraph I of section III of the tariff act of 1913, that "The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury," was intended by the Congress to vest in the Secretary exclusive and final authority to direct an assessment upon an amount less than the entered value, and that the refusal of the Secretary to direct such an assessment was not reviewable either by the Board of General Appraisers (now the United States Customs Court) or, on appeal, by this court. In so holding, the court called attention to the fact that the statute there under consideration differed from the statute under consideration in the case of *Bowling Green Storage & Van Co.* v.

*United States, supra.* The court also pointed out that, by virtue of the provisions of paragraph I of section III, *supra*, collectors of customs were not empowered to review protests and determine the facts upon which relief was demanded by importers, and that the power to determine such facts was vested solely in the Secretary of the Treasury. See also *Stone & Downer Co.* v. *United States*, 11 Ct. Cust. Appls. 484, T. D. 39626; *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 218, T. D. 40228; *Kurz & Co. (Inc.)* *et al.* v. *United States*, 13 Ct. Cust. Appls. 527, T. D. 41395.

Section 515 of the Tariff Act of 1930 provides, among other things, that, upon the filing of a protest as provided in section 514 of that act against a liquidation by the collector of an entry of imported merchandise, the collector shall "within 60 days thereafter *review his decision*, and may modify the same in whole or in part" [italics ours]; that, if the collector affirm his original decision, then the protest, together with the entry and accompanying papers, shall be transmitted to the United States Customs Court for due assignment and determination, as provided by law; and that such determination shall be final and conclusive, except in cases where an appeal is taken to this court.

It is clear from the provisions of sections 514 and 515, *supra*, that it was not the intention of the Congress to confer upon collectors of customs, or upon the courts, the power to review issues, the final determination of which was conferred by the Congress exclusively upon the Secretary of the Treasury. See *Mills & Gibb* v. *United States, supra*, and *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, 427, T. D. 42058. In cases, however, where the official action of collectors and other customs officials, such as local appraisers, depends upon the validity of the action of the Secretary of the Treasury or other designated administrative or executive official, the validity of the action by the Secretary or other administrative or executive official may be reviewed by the United States Customs Court, and, on appeal, by this court, provided the legality of such action is properly raised by the filing of a timely protest. See *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030 (affirmed in *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U. S. 394); *United States* v. *Tower & Son, supra; Carl Zeiss, Inc.* v. *United States*, 23 C. C. P. A. (Customs) 7, T. D. 47654, and cases therein cited.

It is clear from the provisions of sections 3114 and 3115, *supra*, that it was the mandatory duty of the collector to assess the duty herein complained of, and that he had no authority to either remit or refund such duty, such authority being conferred upon the Secretary of the Treasury by the provisions of section 3115. There being no provision either in section 3115, or in any other provision of the Tariff Act of 1930, for a review of the Secretary's decision, we think

it is clear that it was the purpose of the Congress, by the enactment of section 3115, to confer upon the Secretary of the Treasury exclusive and final authority to determine, from the evidence submitted, whether or not the duties provided for in section 3114 should be remitted or refunded. We are confirmed in these views by the fact that as early as December 14, 1891, the Board of General Appraisers (now the United States Customs Court) held, in the case of *M. H. Folger, Jr.* v. *United States*, T. D. 12305, G. A. 1077, that section 3115 of the Revised Statutes, which, so far as the issues here are concerned, was substantially the same as section 3115, *supra*, conferred upon the Secretary of the Treasury final and exclusive authority to determine whether or not duties assessed under section 3114 of the Revised Statutes should be remitted or refunded. To the same effect are the decisions in the cases of *Pioneer Steamship Co.* v. *United States*, Abstract 43332, 37 Treas. Dec. 338, decided September 8, 1919, and *William H. Ellery* v. *United States*, Abs. 45485, 42 Treas. Dec. 405, decided December 13, 1922, also the following cases which were decided under section 466 of the Tariff Act of 1922, amending sections 3114 and 3115 of the Revised Statutes: *D. Sullivan & Co.* v. *United States, supra; Hammermill Paper Co.* v. *United States, supra; E. E. Kelly & Co.* v. *United States*, Abstract 5997, 53 Treas. Dec. 1015; and *J. W. V. Berry* v. *United States, supra.* The Congress is presumed to have had knowledge of the foregoing decisions at the time of the enactment of section 3115 as a part of section 466 of the Tariff Act of 1930. Owing to the fact that, so far as the issues here are concerned, section 3115, *supra*, is precisely the same as section 3115 which was a part of section 466 of the Tariff Act of 1922, and is substantially the same as section 3115 of the Revised Statutes originally enacted in 1866 (R. S. 2d ed. 1878, p. 598), it must be presumed that the construction of section 3115 of the Revised Statutes and section 3115 which was a part of section 466 of the Tariff Act of 1922 met with the approval of the Congress. Accordingly, the doctrine of legislative approval of judicial interpretation and construction of the provisions in question is applicable in the instant case. See *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, and cases therein cited.

It is contended here, however, by counsel for appellant that, should it be held that it was the purpose of the Congress by the provisions of section 3115, *supra*, to confer final and exclusive authority upon the Secretary of the Treasury to determine whether the duties provided for in section 3114, *supra*, should or should not be remitted or refunded, then, in that event, the Secretary of the Treasury was without authority to delegate the power so conferred upon him to the Commissioner of Customs, and that, therefore, the action of the Commissioner of Customs in refusing to remit or refund the duty in

question was without authority of law and was illegal .and void. In support of that contention, counsel rely upon the decisions of this court in the cases of *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. (Customs) 166, T. D. 43474, and *United States* v. *William Prym of America (Inc.)*, 17 C. C. P. A. (Customs) 180, T. D. 43475. It is also contended by counsel that section 281b (a), 5 U. S. C. (44 Stat. 1381), which provides that "The Secretary of the Treasury is authorized to confer or impose upon the Commissioner of Customs or any of the officers of the Bureau of Customs any of the rights, privileges, powers, or duties, *in respect of the importation or entry of merchandise into, or exportation of merchandise from,* the United States, vested in or imposed upon the Secretary of the Treasury by the Tariff Act of September 21, 1922 (ch. 356, 42 Stat. 858), or any other law [italics ours]," the provisions of which were continued in full force and effect by the enactment of section 643 of the Tariff Act of 1930, was intended by the Congress to authorize the Secretary of the Treasury to confer upon the Commissioner of Customs *only* such rights, privileges, powers, or duties "in respect of the importation or entry of *merchandise* into, or exportation of *merchandise* from, the United States [italics not quoted]," and that, as "expenses of repairs" upon which duty was assessed in the instant case are not merchandise, no authority has been conferred upon the Secretary to delegate to the Commissioner of Customs the power to determine whether or not the duty so assessed should be remitted or refunded.

The argument presented by counsel is an interesting one. However, the issue upon which it is based is not raised in appellant's protest, the protest being limited, as hereinbefore noted, to an appeal for the remission or refund of the duty assessed, and, so far as we have been able to ascertain from the record, was raised for the first time in this court. Accordingly, that issue, assuming, without holding, that it might properly have been raised in appellant's protest, is not before us for decision. See *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, T. D. 45341; *M. H. Rogers, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 560, 565, T. D. 46989; *United States* v. *Macksoud Importing Co. et al.*, 25 C. C. P. A. (Customs) 44, 48, 49, T. D. 49041, and cases therein cited; *Kilburn Mill* v. *United States*, 26 C. C. P. A. (Customs) 54, 56, T. D. 49598; *U. Fujita & Co. et al.* v. *United States*, 26 C. C. P. A. (Customs) 63, T. D. 49611; *Raybestos Manhattan, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 340, C. A. D. 109.

For the reasons herein stated, we are of opinion that the court below was right in holding that it was without jurisdiction to consider and determine the issues presented in appellant's protest. Accordingly, the judgment dismissing appellant's protest is *affirmed*.