DUNLAP *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 218. Argued November 29, 30, 1898. — Decided February 20, 1899.

The act of August 28, 1894, c. 349, does not grant a right *in præsenti* to all persons who may, after the passage of the law, use alcohol in the arts, or in any medicinal or other like compounds, to a rebate or repayment of the tax paid on such alcohol, but the grant was conditioned on use, in compliance with regulations to be prescribed, in the absence of which regulations the right did not so vest as to create a cause of action by reason of the unregulated use.

DUNLAP was, and had been for many years, "engaged in the manufacture of a product of the arts known and described as 'stiff hats,'" in Brooklyn, New York. Between August 28, 1894, and April 24, 1895, he used 7060.95 proof gallons of domestic alcohol to dissolve the shellac required to stiffen hats made at his factory. An internal revenue tax of ninety cents per proof gallon had been paid upon 2604.17 gallons before August 28, 1894, making $2344.40, and a tax of one dollar and ten cents per proof gallon had been paid upon the remaining 4456.78 gallons after August 28, 1894, making $4900.81, or $7245.21 in all. In October, 1894, Dunlap notified the Collector of Internal Revenue of the First District of New York that he was using domestic alcohol at his factory, and that under section 61 of the act of August 28, 1894, c. 349, 28 Stat. 509, 567, he claimed a rebate of the internal revenue

tax paid on said alcohol, and he requested the collector to take such official action relative to inspection and surveillance as the. law and regulations might require. Subsequently he tendered to the collector affidavits and other evidence tending to show that he had used the aforesaid quantity of alcohol in his business, together with stamps showing payment of tax thereon, and he requested the collector to visit the factory and satisfy himself by an examination of the books or in any other manner, that the alcohol had been used as alleged. He also requested payment of the amount of tax appearing from the stamps to have been paid. The collector declined to entertain the application, and Dunlap filed a petition in the Court of Claims to recover the full amount of the tax which had been paid, as shown by the stamps, which, on December 6, 1897, was dismissed, whereupon he took this appeal.

The findings of fact set forth, among other things, that "in the early part of September, 1894, the Secretary of the Treasury requested the Commissioner of Internal Revenue to have regulations drafted for the use of alcohol in the arts, etc., and for the presentation of claims for rebate of the tax;" and that "subsequently there was correspondence between these officers as follows:"

From the Commissioner to the Secretary, October 3, 1894:

"I have the honor to report that the preparation of regulations governing the use of alcohol in the arts and manufactures, with rebate of the internal revenue tax as provided by section 61 of the revenue act of August 28, 1894, has been and is now receiving very serious consideration from this office, and many communications have been received from, and personal interviews had with, manufacturers who use alcohol in their establishments; and it is found, in every case without exception, all agree that no regulation can be enforced without official supervision, and that without such supervision the interests of manufacturers and of the Government alike will suffer through the perpetration of frauds.

"As it is found to be impossible to prepare these regulations in a way that will prove satisfactory without official supervision, I have the honor to inquire whether there is any

appropriation or any general provision of law authorizing the expenditure of money by this Department needed to procure such supervision."

From the Secretary to the Commissioner, October 5, 1894:

" Yours of the 3d instant, inquiring whether there is any appropriation or general provision of law authorizing the expenditure of money by the Treasury Department or by the Commissioner of the Internal Revenue to provide supervision of manufacturers using alcohol in the arts, etc., under section 61 of the act of August 28, 1894, is received, and in response I have the honor to state that no appropriation whatever, either special or general, has been made by Congress for the purpose mentioned, or for any other purpose connected with the execution of the section of the statute referred to."

From the Commissioner to the Secretary, October 5, 1894:

" I have the honor to acknowledge the receipt of your letter of the 5th instant, in reply to my letter of the 3d instant, in which you state that no appropriation whatever, either special or general, has been made by Congress authorizing the expenditure of money by the Treasury Department or by the Commissioner of Internal Revenue to provide supervision of manufacturers using alcohol in the arts, etc., under section 61 of the act of August 28, 1894, or for any purpose connected with the execution of the section of the statute referred to.

" In reply I would suggest that, inasmuch as I have been unable, as stated in my letter of the 3d instant, after thorough consideration of the matter, and upon consultation by letter and by personal interview with a large number of the most prominent manufacturers, to prepare any set of regulations which would yield adequate protection to the Government and the honest manufacturer without official supervision, which has not been provided for by Congress, the preparation of these regulations be delayed until Congress has opportunity to supply this omission."

From the Secretary to the Commissioner, October 6, 1894:

" Your communication of yesterday, in reference to the execution of section 61 of the act of August 28, 1894, and

advising me that, for the reasons therein stated, you are unable 'to prepare any set of regulations which would yield adequate protection to the Government and the honest manufacturer without official supervision, which has not been provided for by Congress,' is received. I have also given much attention to the subject, and have fully considered all the arguments and suggestions submitted by parties interested in the execution of the section of the statute referred to, and have arrived at the conclusion that, until further action is taken by Congress, it is not possible to establish and enforce such regulations as are absolutely necessary for an effective and beneficial execution of the law.

"You are, therefore, instructed to take no further action in the matter for the present."

In consequence of this last letter a circular was issued by the Commissioner, November 24, 1894, stating:

"In view of the fact that this Department has been unable to formulate effective regulations for carrying out the provisions of section 61 of the act of August 28, 1894, relating to the rebate of tax on alcohol used in the 'arts, or in any medicinal or other like compounds,' collectors of internal revenue will, on receiving notice from manufacturers of the intended use of alcohol for the purposes named, advise such manufacturers that, in the absence of regulations on the subject, no official inspection of the alcohol so used or the articles manufactured therefrom can be made, and that no application for such rebate can be allowed or entertained."

Finding VIII was:

"On December 3, 1894, the Secretary of the Treasury transmitted to the Congress the annual report on the finances, containing the following statement:

"'Owing to defects in the legislation the Treasury Department has been unable to execute the provisions of section sixty-one of the act of August 28, 1894, permitting the use of alcohol in the arts, or in any medicinal or other like compound, without the payment of the internal tax. The act made no appropriation to defray the expenses of its administration, or for the payment of taxes provided for; and, after

full consideration of the subject and an unsuccessful attempt to frame regulations which would, without official supervision, protect the Government and the manufacturers, the Department was constrained to abandon the effort and await the further action of Congress.

"'It is estimated in the office of the Commissioner of Internal Revenue that the drawbacks or repayments provided for in the act will amount to not less than $10,000,000 per annum, and that the expense of the necessary official supervision will not be less than $500,000 per annum. For the information of Congress, the correspondence between the Secretary and the Commissioner of Internal Revenue upon this subject will accompany this report. Finance report, 1894, LXVI.'

"Appended to this report was a draft of regulations proposed for carrying out section 61, copies of communications from the Commissioner of Internal Revenue explaining the estimates of the appropriations required, and copies of the official correspondence between the Secretary and the Commissioner, given in the preceding finding, showing the action of the Department. The proposed regulations were as follows:"

[These regulations, consisting of thirty-three articles and including many subdivisions, were set forth at length.]

The ninth finding was to the effect that the amounts appropriated in the urgent deficiency act of January 25, 1895, 28 Stat. 636, c. 43, aggregating $245,095, were the amounts of the Secretary's estimate transmitted to Congress December 4, 1894, as necessitated by the income tax provisions of the act of August 28, 1894.

The case is reported 33 C. Cl. 135.


*Mr. George A. King* and *Mr. Joseph H. Choate* for appellant. *Mr. B. F. Tracy* and *Mr. William B. King* were on their brief.


*Mr. Charles C. Binney* and *Mr. Attorney General* for appellees.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Section 61 of the act of August 28, 1894, reads as follows:

"Any manufacturer finding it necessary to use alcohol in the arts, or in any medicinal or other like compound, may use the same under regulations to be prescribed by the Secretary of the Treasury, and on satisfying the collector of internal revenue for the district wherein he resides or carries on business that he has complied with such regulations and has used such alcohol therein, and exhibiting and delivering up the stamps which show that a tax has been paid thereon, shall be entitled to receive from the Treasury of the United States a rebate or repayment of the tax so paid."

The Court of Claims held that as the rebate provided for was to be paid only on alcohol used "under regulations to be prescribed by the Secretary of the Treasury;" and as this alcohol had not been so used, there could be no recovery; and, speaking through Weldon, J., among other things, said:

"The right of the manufacturer to a rebate being dependent on the regulations of the Secretary, such regulations are conditions precedent to his right of repayment, and therefore no right of repayment can vest until in pursuance of regulations the manufacturer uses alcohol as contemplated by the statute. The statute having prescribed certain conditions upon which the right of the claimant is predicated, and from which it originates, there can be no cause of action unless it affirmatively appears that such conditions have been complied with on the part of the claimant. This is a proceeding based upon an alleged condition of liability upon the part of the defendants, and it must be shown that all the essential elements of that condition exist before any liability can accrue. Conceding that it was the duty of the Secretary to prescribe regulations consistent with the purpose and requirements of the law, his failure to do so will not supply a necessary element in the cause of the claimant."

Alcohol had for years been used in the arts and in medicinal and other like compounds, and had been taxed and

no rebate allowed, but by this section, manufacturers who used alcohol in the arts, etc., under regulations prescribed by the Secretary, were granted a rebate on proof of such regulated use and of the payment of the tax on the alcohol so used.

There were no regulations in respect to the use of alcohol in the arts at the time this alcohol was used, but it is contended that the right to repayment was absolutely vested by the statute, dependent on the mere fact of actual use in the arts, and not on use in compliance with regulations. So that during such period of time as might be required for the framing of regulations, or as might elapse, if additional legislation were found necessary, all alcohol used in the arts would be free from taxation, although the exemption applied only to regulated use. But if the right of the manufacturer could not enure without regulations, and Congress had left it to the Secretary to determine whether any which he could prescribe and enforce would adequately protect the revenue and the manufacturers, and he had concluded to the contrary; or, if he had found that it was not practicable to enforce such as he believed necessary, without further legislation, then it is obvious the right to the rebate would not attach; in any view the right was not absolute but was conditioned on the performance of an executive act, and the absence of performance left the condition of the existence of the right unfulfilled.

The distinction between the one class of cases and the other is clear, and has been observed in many decisions of this court.

By the eighth section of the act of June 12, 1866, c. 114, 14 Stat. 60, it was provided, " that when the quarterly returns of any postmaster of the third, fourth or fifth class show that the salary allowed is ten per centum less than it would be on the basis of commissions under the act of eighteen hundred and fifty-four, fixing compensation, then the Postmaster General shall review and readjust under the provisions of said section," (namely, § 2, act of July 1, 1864, c. 197, 13 Stat. 335, 336;) and in *United States* v. *McLean*, 95 U. S. 750, it was held that the law imposed no obligation on the Government to pay an increased salary, though warranted by the quarterly

returns of an office, until readjustment by the Postmaster
General. Mr. Justice Strong, delivering the opinion, after
remarking that the "readjustment was an executive act, made
necessary by the law in order to perfect any liability of the
Government," said:

"But courts cannot perform executive duties, nor treat
them as performed when they have been neglected. They
cannot enforce rights which are dependent for their existence
upon a prior performance by an executive officer of certain
duties he has failed to perform. The right asserted by the
claimant rests upon a condition unfulfilled." And see *United
States* v. *Verdier*, 164 U. S. 213.

On the other hand, in *Campbell* v. *United States*, 107 U. S.
407, it was ruled that where a statute declares that there shall
be a rebate or drawback of a tax under certain circumstances,
the amount to be determined under regulations prescribed by
the Secretary of the Treasury, the inaction of the Secretary
is immaterial, and the drawback must be paid whether ascer-
tained under the Secretary's regulations or not, because the
right to the drawback depends on the statute, and not on the
Secretary's regulations, which relate merely to the ascertain-
ment of the amount. The difference between the statutes in
regard to drawbacks, and the wording of section 61, is very
marked. Drawback laws relate to an article after it is manu-
factured. The mere use of imported materials in manufactur-
ing does not entitle the manufacturer to a drawback, and it is
only when the manufactured goods are exported that the rea-
son for the repayment of duty arises. In such instances the
exportation and the ascertainment of the character and quality
of the imported materials existing in the manufactured article
are subjected to regulation, but not the process of manufacture.
The case of *Campbell* only concerned the ascertainment of
the amount of drawback, and it was held that inasmuch as the
amount had been proved to the satisfaction of the court as
completely as if every reasonable regulation had been com-
plied with, recovery could be sustained.

If we compare section 61 with the statute involved in
*Campbell* v. *United States*, (act of August 5, 1861, 12 Stat.

292, c. 45, § 4,) the distinction between this case and that will be clearly discernible.

| § 61, act of August 28, 1894. | § 4, act of August 5, 1861. |
|---|---|
| " Any manufacturer finding it necessary to use alcohol in the arts, or in any medicinal or other like compound, may use the same under regulations to be prescribed by the Secretary of the Treasury, and on satisfying the collector of internal revenue for the district wherein he resides or carries on business that he has complied with such regulations and has used such alcohol therein, and exhibiting and delivering up the stamps which show that a tax has been paid thereon, shall be entitled to receive from the Treasurer of the United States a rebate or repayment of the tax so paid." | " From and after the passage of this act, there shall be allowed, on all articles wholly manufactured of materials imported, on which duties have been paid, when exported, a drawback, equal in amount to the duty paid on such materials and no more, to be ascertained under such regulations as shall be prescribed by the Secretary of the Treasury; *Provided,* that ten per centum on the amount of all drawbacks, so allowed, shall be retained for the use of the United States by the collectors paying such drawbacks respectively." |

By the act of 1894 Congress required that the thing itself should be done under official regulations; by the act of 1861, simply that proof of the doing of the act should be made in the manner prescribed.

In the case before us the first condition was that the alcohol should have been used by the manufacturer in accordance with regulations; and as that condition was not fulfilled, it is difficult to hold that any justiciable right by action in assumpsit arose.

This is the result of the section taken in its literal meaning, and as the rebate constituted in effect an exemption from taxation, we perceive no ground which would justify a departure from the plain words employed.

Nor are we able to see that the letter of the statute did not fully disclose the intent.

This section was one of many relating to the taxation of distilled spirits, which imposed a higher tax and introduced certain new requirements in regard to regauging, general bonded warehouses, etc., the object to derive more revenue from spirits used as beverages being perfectly clear; and the general intention to forego the revenue that had been previously derived from spirits used in the arts could only be carried out in consistency with the general tenor of the whole body of laws regulating the tax on distilled spirits, which undertook to guard the revenue at all points, and which required from the officers of the Government evidence that everything had been correctly done. The regulations contemplated by section 61 were regulations to insure the *bona fide* use in the arts, etc., of all alcohol on which a rebate was to be paid and to prevent such payment on alcohol not so used; and these were to be specific regulations under that section, and could not otherwise be framed than in the exercise of a large discretion based on years of experience in the Treasury Department.

Since, as counsel for Government argue, the peculiar nature of alcohol itself, the materials capable of being distilled being plentiful, the process of distillation easy, and the profit, if the tax were evaded, necessarily great, had led in the course of thirty years to a minute and stringent system of laws, aimed at protecting the Government in every particular, it seems clear that when Congress undertook to provide for refunding the tax on alcohol when used in the arts, it manifestly regarded adequate regulations to prevent loss through fraudulent claims as absolutely an essential prerequisite; and may reasonably be held to have left it to the Secretary to determine whether or not such regulations could be framed, and if so, whether further legislation would be required. It is true that the right to the rebate was derived from the statute, but it was the statute itself which postponed the existence of the right until the Secretary had prescribed regulations if he found it practicable to do so.

Without questioning the doctrine that debates in Congress are not appropriate sources of information from which to discover the meaning of a statute passed by that body, *United States* v. *Trans-Missouri Freight Association*, 166 U. S. 290, 318, it is nevertheless interesting to note that efforts were made in the Senate to amend the bill by the addition of sections which, while making alcohol used in the arts free from the tax, sought to secure the Government from fraud by provisions for the methylating of such spirits so as to render them unfit for use as a beverage; that these proposed amendments were rejected, 26 Cong. Rec. 6935, 6936; and that subsequently section 61 was adopted as an amendment, it being urged in its support that "if the Secretary of the Treasury and the Commissioner of Internal Revenue think they cannot adopt any regulations which will prevent fraud, then nothing will be done under it; but if they conclude they can adopt such regulations as will prevent fraud in the use of alcohol in the manufactures and the arts, then there will be relief under it." 26 Cong. Rec. p. 6985.

As soon as the act of August 28, 1894, became a law, without the approval of the President, Congress adjourned, and at its first meeting thereafter the Secretary reported a draft of the regulations he desired to prescribe, stating that their enforcement would cost at least half a million of dollars annually, for which no appropriation was available, and that therefore he could not execute the section until Congress took further action, and he transmitted the correspondence between himself and the Commissioner, including his letter of October 6, 1894, instructing the Commissioner to take no action regarding the matter.

Congress was thus distinctly informed that no claims for rebate would be entertained in the absence of further legislation, but none such was had, and finally, on June 3, 1896, section 61 was repealed, and the appointment of a joint select committee was authorized to "consider all questions relating to the use of alcohol in the manufactures and arts free of tax, and to report their conclusions to Congress on the first Monday in December, eighteen hundred and ninety-six," with

power to "summon witnesses, administer oaths, print testimony or other information." 29 Stat. 195, c. 310.

Numerous other provisions of the act called for regulations by the Secretary of the Treasury, such as those relating to the collection of customs duties and the free list; to the importation or manufacture in bond or withdrawal from bond free of tax; to drawbacks on imported merchandise; to the collection of internal revenue, and some others; but these related to matters for whose efficient regulation the Secretary of the Treasury was invested with adequate power, and their subject-matter was different from that of section 61.

If the duty of the Secretary to prescribe regulations was merely ministerial, and a mandamus could, under circumstances, have issued to compel him to discharge it, would not the judgment at which he arrived, the action which he took, and his reference of the matter to Congress, have furnished a complete defence? But it is insisted that by reason of the exercise of discretionary power necessarily involved in prescribing regulations as contemplated, the Secretary could not have been thus compelled to act. We think the argument entitled to great weight, and that it demonstrates the intention of Congress to leave the entire matter to the Treasury Department to ascertain what would be needed in order to carry the section into effect. Nothing could have been further from the mind of Congress than that repayment must be made on the unregulated use of alcohol in the arts, if in the judgment of the Department, as the matter stood, such use could not be regulated.

All this, however, only tends to sustain the conclusion of the Court of Claims that this was not the case of a right granted *in præsenti* to all persons who might, after the passage of the law, actually use alcohol in the arts, or in any medicinal or other like compounds, to a rebate or repayment of the tax paid on such alcohol, but that the grant of the right was conditioned on use in compliance with regulations to be prescribed, in the absence of which the right could not vest so as to create a cause of action by reason of the unregulated use. The decisions bearing on the subject are examined and

discussed in the opinion of the Court of Claims, and we do not feel called on to recapitulate them here.

*Judgment affirmed.*

MR. JUSTICE BROWN, MR. JUSTICE WHITE, MR. JUSTICE PECK-HAM and MR. JUSTICE MCKENNA dissented.