(C. D. 216)

ATLAS MARINE CO. ET AL *v.* UNITED STATES

United States Customs Court, First Division

(Decided September 25, 1939)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: The merchandise the classification of which is the subject of these protests consists of lubricating oil imported from Denmark on which the collector of customs imposed a tax at the rate of 4 cents per gallon under the provisions of section 601 (c) (4) of the Revenue Act of 1932.

As originally drawn the protests contained a claim with reference to the drums in which the oil was contained but this was abandoned at the trial, the sole claim remaining in the protests being that the oil should have been allowed free entry under section 630 of the Revenue Act of 1932.

Called as a witness on behalf of the plaintiffs on the trial of the issue, Sigmund Baardsen testified that he was manager of the plaintiff-importer, the Atlas Marine Supply Co., in the business of ship-

chandling; that he was familiar with the merchandise here involved and that all such merchandise was purchased for use as ships' stores on foreign vessels engaged in the foreign trade.

It appears that after importation all of the merchandise except that covered by protests 759319–G and 748109–G was entered under warehouse entries and placed in bonded warehouse and remained in customs custody from the time of importation until it was sold and delivered to certain vessels of foreign registry which cleared from the port of Los Angeles for foreign ports.

It also appears that the merchandise covered by protests 759319–G and 748109–G was entered under consumption entries and that between the time of entry and the time it was sold for use as lubricating oil on vessels engaged in the foreign trade it was not in customs custody.

In *Guy B. Barham Co.* v. *United States*, T. D. 48579, it was held that lubricating oil is included within the term "ships' stores" as used in section 630 of the Revenue Act of 1932.

The only question remaining, therefore, is whether by the terms of section 630, *supra*, oil sold subsequent to importation is exempt thereunder.

Section 630 of the Revenue Act of 1932 reads as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 601 (b).

This section appears as section 5 in chapter 96 of the act approved June 16, 1933 (48 Stat. 256).

Section 1111 of the Revenue Act of 1932, under the caption "Definitions," contains the following:

(a) When used in this Act—

\*         \*         \*         \*         \*         \*         \*

(12) The term "Commissioner" means the Commissioner of Internal Revenue.

Article 28 of Regulation 44 promulgated by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury on September 11, 1934, contains the regulations prescribed by the Commissioner of Internal Revenue under the authority of section 630, *supra*, covering the exemption from the tax of articles sold *by the manufacturer* for use as fuel supplies, ships' stores, sea stores, or

legitimate equipment on the vessels named in said section. Nothing contained in that article applies to sales by any person other than the manufacturer to or for resale to the owner, master, or responsible officer of that vessel for the use specified. Manifestly article 28 of Regulations 44, *supra*, does not apply to the merchandise in issue.

On July 8, 1933, T. D. 46522 was promulgated by the Acting Secretary of the Treasury, and by its terms article 455 (*b*) and articles 457 to 461, inclusive, of the Customs Regulations of 1931, were extended—

\* \* \* to cover withdrawals of merchandise from bonded warehouse, or bonded manufacturing warehouse, under the provisions of section 630 of the Revenue Act of 1932.

Article 455 (*b*) of the Customs Regulations of 1931 reads as follows:

Art. 455.   Exemption From Customs Duties and Internal-Revenue Tax.

\*       \*       \*       \*       \*       \*       \*

(*b*) Unless a vessel is operating on a regular schedule in a class of trade which entitles it to the privilege, it is not considered to be actually engaged in the foreign trade, or in trade between the Atlantic and Pacific ports of the United States or between the United States and its possessions, unless it actually clears from the port where the withdrawal is made for a foreign port, a port on the opposite coast of the United States, or clears from a port in the United States to a port in one of its possessions (or vice versa), as the case may be; but the fact that a vessel so clearing intends to stop at an intermediate port before reaching the port for which it cleared, for the purpose of lading or unlading cargo or pasrengers, will not debar it from claiming the privilege.

and articles 457 to 461, inclusive, as they were in force at the time of the entries and withdrawals here involved, read as follows:

Art. 457. Form of Withdrawal—Bond.—(*a*) Withdrawals shall be made on customs Form 7506.

(*b*) If the vessel named in the withdrawal is clearing coastwise, or in the case of a vessel in the foreign trade, goes from port to port in the United States tc complete lading or unlading of cargo or passengers, and the withdrawal is made by a person other than the importer of record, a bond must be taken on customs Form 7561.

(*c*) No bond shall be required in the case of war vessels.

Art. 458. Delivery Permit—Lading.—(*a*) Upon the filing of the withdrawal and the execution of the bond, when required, the collector shall issue a permit on customs Form 7506A.

(*b*) A copy of the withdrawal will be transmitted to the surveyor or inspector acting as such, who shall designate a customs officer to supervise the lading of the merchandise and make a return thereof.

(*c*) The merchandise shall be entered on the store list of the vessel on which laden, which fact shall be certified by the marine clerk or officer acting as such on the withdrawal.

Art. 459. Intermediate Ports.—A copy of the store list showing the articles withdrawn and taken on board as supplies shall be made on or attached to the manifest, and if the vessel touches at an intermediate port in the United States the collector at such port shall see that no portion of the supplies so noted is landed except upon entry and payment of duties.

Art. 460. Vessels Diverted After Clearance.—When, subsequent to clearance, a vessel which has withdrawn supplies free of duty is diverted to a class of trade not entitled to the privilege, the parties in interest shall immediately notify the collector of customs at the port of withdrawal, who shall cancel the conditional withdrawal and collect duty on such supplies. Whenever any such diversion comes to the attention of a collector of customs at any port in the United States, he shall likewise notify the collector at the port of withdrawal.

Art. 461. Cancellation of Bonds.—The bond given on withdrawal of supplies shall be canceled upon the production of an affidavit of the master or other officer of the vessel having knowledge of the facts, showing that such supplies have been used on board the vessel, and no portion thereof landed within the limits of the United States or any of its possessions.

From an examination of the statute it will be observed that the right of exemption from the taxes imposed under the provisions of the revenue act, *supra*, granted in section 630 is conditioned upon compliance with regulations to be prescribed "by the Commissioner, with the approval of the Secretary of the Treasury."

An examination of the regulations quoted above as they existed at the time of the entries and withdrawals here involved clearly indicates that no regulation was promulgated by the Secretary of the Treasury covering exemption from the taxes imposed under the provisions of the revenue act on merchandise, otherwise covered by section 630, *supra*, but which had been imported and entered for consumption and so passed into the commerce of the United States.

In *Dunlap* v. *United States*, 173 U. S. 65, it was held in effect that where a statute requires that compliance with a regulation shall be a condition precedent to a right of exemption or of rebate, the making of such regulation is itself a condition precedent to the existence of any right of exemption or rebate and where, for example, a Secretary of the Treasury had failed to make proper and enforceable regulations, no right of exemption or rebate arose under the statute. Chief Justice Fuller, during the course of the opinion, said:

* * * In any view the right was not absolute, but was conditioned on the performance of an executive act; and the absence of performance left the condition of the existence of the right unfulfilled.

We have not been directed to nor have we been able to find any regulations promulgated by the Secretary of the Treasury upon which any right to exemption under the provisions of section 630, *supra*, from the taxes imposed under section 601 of the Revenue Act of 1932 may be predicated as to merchandise imported and entered for consumption, and on the authority of the *Dunlap* case, *supra*, we hold that no right of exemption accrued under the provisions of section 630 either at the time the merchandise covered by protests 748109–G and 759319–G was imported and entered for consumption or was sold and delivered to foreign vessels engaged in foreign trade. These protests are therefore overruled and the decision of the collector in each case is affirmed.

With reference to the merchandise covered by the other four protests here involved, we find nothing in the record to indicate that the regulations prescribed by the commissioner with the approval of the Secretary quoted above were in any respect complied with.

It is well settled that where a statute makes exemption from the payment of duty which would otherwise accrue conditioned upon compliance with regulations to be prescribed by an executive officer, such regulations are held to be mandatory and must be complied with in order to obtain the benefit of the exemption.

In *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T. D. 32386, Judge DeVries, writing the unanimous opinion of the court, among other things, said:

The principle controlling such cases may be generally stated that where regulations are promulgated by the Secretary of the Treasury under the general power granted by the provisions of section 251 of the Revised Statutes to make general rules and regulations for the collection of the revenues, such are deemed and held regulative or administrative merely and not conditions precedent to the right of exemption from duty. Compliance with such regulations may be had after the acts of importation and entry. Compliance with such may be the subject of proof before the Board of General Appraisers. Where, however, an exemption from or reduced rate of duty is claimed under a specific provision of the statutes which, as in this case, is accorded under or subject to such regulations as to proof or otherwise that may be prescribed by the Secretary of the Treasury, it has uniformly been held that such regulations become a condition precedent to the right accorded by the statute and must be complied with at the time of entry, or as otherwise specifically directed by the statute granting the same. In such cases the right to an exemption from or to a reduced rate of duty is an exemption accorded in the specific instance only, and constitutes an exception from the general rule, which must, in order to be enjoyed, be subject to compliance with the condition precedent prescribed by the Secretary.

As hereinbefore noted, no attempt was made by counsel for the plaintiffs to establish that the regulations had been complied with. There is nothing to show that such regulations were not reasonable and we hold that the absence of proof concerning compliance therewith is a defect fatal to recovery under the protests. Each of the protests is, therefore, overruled and the decision of the collector is affirmed.

Judgment will issue accordingly.

### DISSENTING OPINION

BROWN, Judge: This suit against the United States was brought at Los Angeles, Calif., to recover certain special taxes of 4 cents per gallon claimed to have been illegally collected under section 601 (c) (4) of the Revenue Act of 1932 on imported lubricating oil sold for ships' supplies to foreign ships entering that port.

The plaintiffs' claim is based upon section 630 of said Revenue Act of 1932, which reads as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the Atlantic and Pacific ports of the United States or between the United States and any of its possessions. Articles manufactured or produced with the use of articles. upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purpose of section 601 (b).

The proof shows that all the lubricating oil here involved was imported by a ship chandler whose business is selling ships' supplies and which concern (the real plaintiff for which company the customs broker brings this suit) actually sold it all to ships engaged in foreign trade for their supplies.

The following colloquy took place between counsel (R. pp. 6, 7):

Mr. GOTTFRIED. I have here the warehouse withdrawals in the various entries, and other documents contained in the official files of the collector of customs, which show that this merchandise was withdrawn from bonded warehouse, and also that the merchandise was laden on board certain vessels which cleared at the port of Los Angeles for a foreign port.

Judge DALLINGER. It is agreed by and between counsel that all of this merchandise remained in customs custody during this period?

Mr. SPECTOR. Upon Mr. Gottfried's statement, and that he personally examined the documents and all the merchandise covered by the protests, as shown by the documents in the possession of the collector, that the merchandise was sold to ships leaving for a foreign port, the Government agrees to stipulate those facts without any proof being offered.

Mr. GOTTFRIED. I want to amend that, to eliminate two protests, to wit 759319-G and 748109-G. The statement above referred to insofar as it refers to the other protests is acceptable to the plaintiff. In other words, with respect to these protests, 759319-G and 748109-G, the merchandise was entered under consumption entry and did not remain in the Government bonded warehouse.

Judge DALLINGER. Does the Government contend that that makes any difference?

Mr. SPECTOR. Yes; we think it does. In the brief we will have to show the difference.

The real evidence following conclusively establishes that all the oil here involved was sold by the ship chandler to foreign ships as part of their ships' supplies with which to lubricate their machinery.

The Government's contention is as follows in Government brief, pages 4 and 5:

* * * Section 630 provides that no tax could be imposed upon an article sold for use as fuel supplies, which means that the imposition of the said tax and the sale of the said merchandise as fuel supplies, etc., had to be simultaneous in order to be entitled to exemption. If the merchandise had already been sold as fuel supplies then it was entitled to exemption from said tax but such sale had to take place prior or at the time of importation. Once the tax had been levied

upon this merchandise it could not subsequently be exempted or waived. Nowhere does the act provide for any waiver of the tax or remittance of the tax by reason of a subsequent use.

The case at bar is entirely different from that in the case of *Guy B. Barham Co. v. United States*, T. D. 48579, 70 Treas. Dec. 461, quoted by the importer in its brief, because in that case there was no delivery of the merchandise to Government warehouse, nor was it delivered to the importer but was sold and delivered to various Norwegian vessels.

We contend that where the tax under section 601 (c) (4), *supra*, has already been assessed by reason of the said merchandise being so taxable, that such tax could not subsequently be remitted by the occurrence of an act after importation.

In any event the merchandise as covered by protests 759319–G and 748109–G could not possibly be entitled to exemption under section 630, *supra*, because that merchandise left Government custody, was entered for consumption, was on the premises of the importer, was offered for sale to all persons and all comers, and was subsequently sold to several people. There was no evidence that part or all of the merchandise was not sold for purposes other than those contained in section 630, *supra*. There was no definite proof that the merchandise sold for fuel supplies was identical to the imported merchandise. The merchandise in these two protests having left the Government's custody, was not under Government control, and could not be properly identified as being the same merchandise subsequently sold to foreign vessels. We therefore urge that these two protests be overruled in all respects.

The latter factual contention is in error because the oral proof shows conclusively that every bit of the imported merchandise was sold and delivered to foreign ships for lubricating oil.

Section 350 is for the benefit of foreign trade. It would benefit it very little if the Government's contention prevailed. Ships have to buy supplies like lubricating oil as they need them and that need depends largely upon the storms and weather of the voyage.

It would be difficult to order in advance lubricating oil in foreign countries to meet them in appropriate supply at their ports of call. By ordinary necessity they must pick them up from ship chandlers, like the importer here, when they reach port as they can find them. Consequently, if the exemption is narrowly construed to supplies bought by advance orders before importation, it would take the heart out of the exemption and make it almost useless for the ordinary small shipowner. Only the very largest and most important concerns would profit by it at all. This seems a conclusive reason why Congress did not intend such a narrow construction. There is nothing in the language used or implied by Congress indicating that the exemption was intended by Congress to be so narrow and small in practical effect.

Therefore, the contention of the Government should be overruled and the protests sustained.

No mention is made in what has been said concerning the involved and illogical argument in the majority opinion, attempting apparently to find an excuse to throw out these protests on the grounds of noncompliance with the regulations. It required no comment. This

strange argument is not urged in the Government brief naturally enough. It would hardly have been good faith to have urged it after the colloquy between counsel quoted above, which dispensed with proof of the official papers showing how the oil in four of the protests came out of warehouse and into the holds of the vessels purchasing it for lubrication of their machinery.

Further, if the exemption is not to be construed away by limiting it to supplies purchased in advance of importation by vessels in the foreign trade, it must equally apply to supplies entered for consumption, if actually sold to such vessels, as well as to warehouse goods. The regulations could not limit the scope of the statute and there is nothing in the regulations that attempts to do so.

In conclusion, I agree with the statement in the importers' brief to the following effect:

This question has already been decided favorably to the importers' contentions in the case of *Guy B. Barham Co.* v. *United States*, T. D. 48733, wherein the same ultimate consignee and commodity were involved, and the same procedure was followed. This court held that the oil in that case, which the evidence disclosed was sold as ship's stores to foreign vessels engaged in foreign trade, was exempt from the tax levied under section 601 (c) (4), by virtue of the provisions of section 630.

The same witness testified in this case as in the cited case. The facts are "on all fours."