(C. D. 549)

ATLAS MARINE SUPPLY CO. ET AL. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 7, 1941)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector* and *Richard F. Weeks*, special attorneys), for the defendant.

WALKER, Judge: These protests are before us on rehearing, the order therefor having been granted after the promulgation of the original decision in C. D. 216, reported in 3 Cust. Ct. 116. The merchandise involved consists of lubricating oil on which a tax of 4 cents per gallon was imposed under the provisions of section 601 (c) (4) of the Revenue Act of 1932. So far as pertinent, that section reads as follows:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

(a) In addition to any other tax or duty imposed by law, there shall be imposed a tax as provided in subsection (c) on every article imported into the United States * * *.

* * * * * * *

(c) There is hereby imposed upon the following articles sold in the United States by the manufacturer or producer, or imported into the United States—a tax at the rates hereafter set forth, to be paid by the manufacturer, producer, or importer:

* * * * * * *

(4) * * * lubricating oil, 4 cents per gallon * * *.

In each of the protests a claim for exemption from the foregoing tax by virtue of the provisions of section 630 of the same act is made. That section reads as follows:

SEC. 630. EXEMPTION FROM TAX OF CERTAIN SUPPLIES FOR VESSELS.

Under regulations prescribed by the Commissioner, with the approval of the Secretary, no tax under this title shall be imposed upon any article sold for use as fuel supplies, ships' stores, sea stores, or legitimate equipment on vessels of war of the United States or of any foreign nation, vessels employed in the fisheries or in the whaling business, or actually engaged in foreign trade or trade between the United States and any of its possessions. Articles manufactured or produced with the use of articles upon the importation of which tax has been paid under this title, if laden for use as supplies on such vessels, shall be held to be exported for the purposes of section 601 (b).

There are two classes of entries involved. Those covered by protests 759319–G and 748109–G were consumption entries, while the entries covered by the remaining protests were for warehouse. In the original decision on the instant cases it was pointed out that there was nothing in the record to indicate that the regulations prescribed by the Commissioner of Customs pursuant to section 630, *supra*, in order to obtain the exemption in the case of goods stored in bonded warehouse, had been complied with. From the evidence offered and upon the statement made in the brief filed on behalf of the defendant that—

It may be mentioned here that we deem proof of compliance with the regulations satisfactory, so far as the warehouse entries are concerned.

we are satisfied that the regulations applicable to secure exemption from the payment of tax on oil, withdrawn from warehouse after sale

of the same for use as ships' stores on vessels actually engaged in foreign trade, were complied with, and judgment will therefore issue in favor of the plaintiffs with respect to the merchandise covered by the warehouse entries.

As to the merchandise covered by the consumption entries a different picture is presented. It appears that in fact the plaintiffs are here claiming a refund of a tax paid at the time of entry upon the importation of the merchandise and that the refund is claimed by reason of a transaction which occurred *after* such importation and after the merchandise had entered the commerce of the United States.

The evidence offered at the time of trial establishes that the oil covered by the consumption entries was sold for use as ships' stores on vessels actually engaged in foreign trade. As to the time when such sale took place the following appears in the record as being the testimony of the manager of the plaintiff companies:

*Direct examination:*.

\* \* \* \* \* \* \*

Q. Did you also personally sell the merchandise; did you make the sales of the merchandise; that is, after it was imported, or did you sell the merchandise from some bonded warehouse?—A. Yes, sir.

\* \* \* \* \* \* \*

*Cross-examination:*

X Q. At the time that you purchased this oil did you at that time have a contract to resell this oil?—A. Yes.

X Q. Or did you purchase this oil for the purpose of immediately delivering it to a ship?—A. No.

X Q. Or did you subsequently, after this merchandise was received in Los Angeles and after it was put into the Government warehouse—did you subsequently sell this merchandise?—A. Yes.

\* \* \* \* \* \* \*

X Q. At the time that the merchandise was purchased did you know who was purchasing it?—A. Yes.

X Q. Did they tell you?—A. Yes.

X Q. Did the officer himself come into the store?—A. No.

X Q. He bought it from you?—A. I called on him on the vessel. I called on the chief engineer.

X Q. And then you delivered the oil pursuant to an agreement you made with him?—A. Yes.

\* \* \* \* \* \* \*

Although the answer to the first question asked on cross-examination conflicts with the remainder of the witness's testimony, it is apparent, we think, that the oil in question was sold subsequent to importation.

On its face section 630, *supra,* purports to grant *exemption from the payment* of taxes, and it is apparent from a reading of the same that it contemplates situations wherein the merchandise is sold prior, or at the most, simultaneously, with the occurrence of the act which gives rise to the imposition of the tax. No other logical meaning could be drawn from the words \* \* \* no tax under this title *shall be imposed* upon any article *sold* for use, etc. \* \* \*"

Section 630 grants exemption, under the circumstances therein set forth, from the payment of the taxes which would ordinarily be imposed under title IV of the Revenue Act of 1932. With the exception of section 601 (c) of that title all of the taxes imposed thereby are imposed upon the articles when sold by the manufacturer, producer, or importer. Section 601 (c), however, imposes the taxes created thereby on the articles covered "when sold in the United States by the manufacturer or producer, or imported into the United States." Thus, in the case of the lubricating oil in question the act which gave rise to the imposition of the tax was the importation of the oil into the United States.

From the portions of the record quoted above it is manifest that so far as the oil covered by the consumption entries involved is concerned importation was complete and it had passed into the commerce of the country before the sale to vessels actually engaged in foreign trade was made, and we are of the opinion that no return of the tax paid on importation can be made in the absence of a statute specifically providing for such return. The taxable or tax-exempt status of the merchandise was determined at the time of importation, and at that time it was taxable. It might be pointed out that the oil in bonded warehouse stood in a different light under the rule that goods in bonded warehouse are not considered as imported until a permit of delivery has been issued and they enter into the commerce of the country. *Stone & Downer et al.* v. *United States,* 19 C. C. P. A. 259, T. D. 45388.

Counsel for the plaintiffs has called our attention to regulations issued by the Commissioner of Internal Revenue under the authority contained in section 630, *supra,* as being sufficiently broad to justify plaintiffs' claim. These regulations are embodied in Internal Revenue T. D. 4387 and T. D. 4388. T. D. 4387 added article 76½ to regulations 46 of the Internal Revenue Bureau. Regulations 46, however, is limited in scope to the excise taxes imposed under sections 602 to 611, inclusive, and sections 613 and 614 of the revenue act. T. D. 4388 added article 57½ to Regulations 44, which dealt, among other things, with the tax imposed on lubricating oil in section 601 (c) of the Revenue Act of 1932, but it is noted that the following is contained in the introductory statement to those regulations:

The tax on the importation of articles, as distinguished from the tax on sales by importers, will be administered by the Bureau of Customs of the Treasury Department under regulations promulgated by the Secretary of the Treasury.

Therefore the regulations cited by counsel can have no application to the situation at bar.

We are satisfied that it was not intended by section 630 that the duties paid on the importation of goods subject thereto under section 601 (c), *supra,* should be returned upon the sale, subsequent to

importation, of such goods for use as stores or supplies of vessels of the types enumerated in said section, and we are further satisfied that such being the case no machinery was set up either by the Commissioner of Internal Revenue or the Commissioner of Customs for the return of such duties.

We are not unmindful of the portion of the legislative history of section 630 quoted by plaintiffs' counsel in the brief filed on behalf of their client, being taken from the Congressional Record of May 11, 1933, vol. 77, No. 48, pp. 3262, 3263, and 3264. In our view this discussion between the Senator apparently in charge of the bill and other members of the Senate clearly outlines the purpose of section 630 to secure for the benefit of American producers the business of supplying vessels lost to them by the imposition of the taxes under title IV of the Revenue Act of 1932, but it does not support the proposition here urged by the plaintiffs, viz, that besides granting exemption from the payment of the tax upon the sale of such articles Congress intended to provide for the return of tax collected on entry for consumption by reason of sales occurring after importation and entrance into the commerce of this country. This is contrary to the general rule obtaining in the assessment and collection of customs duties on merchandise entered for consumption and had Congress intended to depart from the rule it would have used language specifically directed toward that end.

From the evidence before us there is not the slightest doubt that the importer in the instant case acted in good faith and the transaction shows that there was not the slightest thought of fraud therein. However, so to interpret section 630 as to permit the importer to come in and claim a refund would, to our mind, open the door to extensive fraud and invite all kinds of subterfuge to avoid payment of the tax imposed, and, in effect, give opportunity to nullify the provisions of section 601 (c) in their entirety. Moreover, since the statute provides no means or mode for refund, such an interpretation, it seems to us, would compel the court to legislate. This, of course, it cannot do.

In the memorandum offered in support of the motion for rehearing counsel for the plaintiffs calls attention to the fact that a motion made on behalf of the plaintiffs to incorporate the record in the case of *Guy B. Barham Co.* v. *United States*, the decision in which case is reported in T. D. 48733, was not passed upon by the court at the time of the original decision herein. The following appears in the record in connection with the motion:

Mr. GOTTFRIED. I move at this time to incorporate the record in *Guy B. Barham* v. *United States*, T. D. 48733.

Mr. SPECTOR. I object. There was no notice served upon me.

Mr. GOTTFRIED. The objection of counsel is when you give them notice then they haven't got the same parties or witnesses for examination. When you bring the witnesses then you want notice.

The motion was not passed upon by the trial court and consequently decision was reserved for action by the division of the court having cognizance of the subject matter.

The provision in the rules of this court for the admission into evidence of records in former trials as it existed at the time the foregoing motion was made contained the following paragraph:

The court shall not, however, entertain any motion to admit the record in any case unless at least five days' notice of the intention to offer said record in evidence shall have been served upon the opposite party, or unless such notice is waived by the opposing party.

In view of this paragraph we must deny the motion to incorporate the record in the *Barham* case. It might be well to note, however, that although the *Barham* case involved the same subject matter as the present suit the issue as to the applicability of section 630 to cases where goods taxable under section 601 (c), *supra,* are sold subsequent to importation for use as supplies on vessels engaged in foreign trade was not raised or discussed.

For the foregoing reasons judgment will issue overruling the protests as to the merchandise covered by the consumption entries involved, but sustaining them to the extent hereinbefore indicated as to the merchandise covered by the warehouse entries.