Raybestos Manhattan, Inc. *v.* United States (No. 4291)[1]

---

[1] C. A. D. 109.

United States Court of Customs and Patent Appeals, March 4, 1940

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument February 8, 1940, by Mr. Schwartz and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

In 1937 appellant imported at the port of New York certain merchandise invoiced as "50% Meta Cresol, 50%." It was classified by the collector under the provisions of paragraph 27 (a) (2) of the Tariff Act of 1930 and assessed with duty at the rate of 40 per centum ad valorem and 7 cents per pound, as provided in paragraph 27 (a) (5).

Appellant filed a protest against such classification and assessment with duty, the pertinent portions of which read as follows:

Notice of dissatisfaction is hereby given with and protest is hereby made against your decision, liquidation and assessment of duties at 40% and 7¢ per lb. or other rate or rates on Meta Cresol covered by the entries below named, or other merchandise covered by said entries, and contained in the cases or packages marked and numbered as below stated. The reasons for objection are as follows:

We claim that said merchandise is properly dutiable at 20% and 3½¢ per lb. under Par. 27 (b) of the Tariff Act of 1930.

When the cause came to trial before the Customs Court, First Division, the Government moved to dismiss the protest upon the ground that it fails to comply with section 514 of said tariff act. The motion and reasons therefor, as contained in the record, read as follows:

*Mr. Weeks:* I move to dismiss the protest upon the ground that it fails to comply with Section 514 of the Tariff Act of 1930. This is the first time that I have heard officially, and in a way it is binding on the plaintiff, what the claim is. It is impossible to tell from the protest what their claim is. They simply say that it is classifiable, according to their claim, under paragraph 27 (b). Now, paragraph 27 (b) provides for five separate commodities, or acids, which are classifiable under that paragraph. We don't know whether it is the first one, metacresol, having a certain purity, or whether it is paracresol having the same purity, or whether it is orthocresol having the same purity, or whether it is phenol, or whether it is carbolic acid, or whether is it cresylic acid having the specifications which the Tariff Act lays down. There are six different things that it might be, and the protest doesn't show on which their claim is based. It has occasioned the greatest difficulty even to know what the issue was that we have to meet.

Decision upon the motion was reserved by the court.

Testimony was taken in behalf of appellant. The Government offered no evidence.

Thereafter the Customs Court rendered a decision, Judge Brown dissenting, dismissing the protest, and entered judgment accordingly. From such judgment this appeal was taken.

The provisions of said tariff act, insofar as they are here pertinent, read as follows:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

* * * all decisions of the collector, * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons * * *, unless the importer, * * * shall, within sixty days after, * * * such liquidation * * *, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. * * *

PAR. 27. Coal-tar products: *

*       *       *       *       *       *       *

(a) (2) all distillates (except those provided for in subparagraph (b)) of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate;

*       *       *       *       *       *       *

(5) all the foregoing products provided for in this paragraph, not colors, dyes, or stains, color acids, color bases, color lakes, leuco-compounds, indoxyl, indoxyl compounds, ink powders, photographic chemicals, medicinals, synthetic aromatic or odoriferous chemicals, synthetic resinlike products, synthetic tanning materials, or explosives, and not specially provided for in paragraph 28 or 1651, 40 per centum ad valorem and 7 cents per pound.

(b) Metacresol having a purity of 90 per centum or more, orthocresol having a purity of 90 per centum or more, paracresol having a purity of 90 per centum or more, phenol, carbolic acid which on being subjected to distillation yields in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate, cresylic acid which on being subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate, and any mixture of any of the foregoing products with any of the products provided for in paragraph 1651, 20 per centum ad valorem and 3½ cents per pound.

It appears from the foregoing that the only question before us is the sufficiency of appellant's protest under the provisions of section 514.

The report of the collector upon the protest is in the record before us and reads as follows:

The Appraiser's description of the merchandise, made in accordance with Section 500 (a) (4), Tariff Act of 1930, and Articles 772 (c) and 776 (g), Customs Regulations of 1937, was accepted and adopted by this office in liquidation, and the merchandise was accordingly classified as Coal Tar Distillate at 40%/7¢ lb. under paragraph 27a–2 of the Tariff Act of 1930.

See chemist's report attached and invoice.

The protestant claims that the merchandise is dutiable at other rate or rates, but gives no reason why any of these rates is correct and that assessed is incorrect.

In accordance with Section 515 of the Tariff Act of 1930 our decision was reviewed, and no reason being found for modifying the same in whole or in part, it is adhered to.

The protest was received within the statutory time.

\*       \*       \*       \*       \*       \*       \*

The report of the chemist referred to in the collector's report is attached to the papers transmitted by the collector to the Customs Court and contains the following:

> The sample is meta-para cresol, a coal tar distillate containing less than 5% tar acids distilling below 190° C and more than 75% below 215° C by the official method as amended in T. D. 42021. It contains about 50% meta cresol. The nearest domestic competitive product is Barrett's Cresol R3A.

In appellant's consumption entry the merchandise is described as "Meta Cresol," no percentage being stated, whereas in the consular invoice, as hereinbefore stated, the merchandise was described as "50% Meta Cresol 50%."

One David Weisberg, a witness on behalf of appellant, testified that he is a chemist and analyzed samples of the involved merchandise; that the involved merchandise was cresylic acid, and that its composition was 95 per centum meta paracresol and 5 per centum orthocresol, yielding in the portion distilled below 215° C. a quantity of acids equal to or more than 75 per centum of the original distillate. The witness further testified that the terms cresol and cresylic acid are synonymous and are used interchangeably.

One Edward L. Carey, a witness for appellant, testified that he is a chemist and that cresylic acid or cresol is a mixture of orthocresol, metacresol, and paracresol, and that the involved merchandise consisted of cresylic acid.

Emil Klarmann, another witness for appellant, testified substantially to the same effect.

It thus appears that it was upon the trial of the cause that appellant for the first time claimed that the involved merchandise consisted of cresylic acid, and apparently established that cresylic acid consists of a mixture of metacresol, orthocresol, and paracresol.

As hereinbefore stated, the merchandise was invoiced and entered as metacresol, and appellant's protest described it as such.

It is true that invoice descriptions and entries in accordance therewith are generally open to explanation and contradiction, both by the Government and the importer. In the case of *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T. D. 38374, the court said:

> It is conceded, of course, that the merchandise was produced by the hydrogenation of some kind of an oil; the question therefore first arises as to the kind of oil which this originally was. In deciding this we must first observe that the invoices described the article as hardened fish oil, and furthermore that the im-

porters entered it for duty under a similar description. In the absence of explanation these facts are certainly entitled to substantial weight in the decision of the present question. It is true that the invoice descriptions of merchandise are generally, perhaps always, open to explanation and contradiction, both by the Government and the importers; nevertheless, a statement against interest made by importers in their invoices and entries certainly establishes a prima facie case against any contradictory claim made by them in their protest. * * *

In the case of *United States* v. *Wo Kee & Co.*, 21 C. C. P. A. (Customs) 341, T. D. 46880, we said:

Invoice descriptions of imported merchandise in cases like the one at bar are admissions against interest and are presumptively correct. When such admissions are contradicted by a protest, however, the importer is not precluded from disproving the correctness of such description.

In the case at bar it will be noted that the protest does not contradict the description in the invoice and consumption entry, but is in accord with it. We speak of this, however, not for the purpose of raising any question of estoppel against appellant to prove the actual character of the merchandise if his protest made any claim that could be reasonably held to be inconsistent with such description, but only for the purpose of raising the question of whether the collector had the right to believe that no claim was made other than that the merchandise was in fact metacresol "having a purity of 90 per centum or more." Section 514 expressly requires that the importer in his protest shall set forth "distinctly and specifically * * * the reasons for the objection thereto."

The principles regarding the sufficiency of protests are well settled in decisions of the Supreme Court of the United States and of this court. In the case of *Davies* v. *Arthur*, 96 U. S. 148, the court stated:

* * * the object of the requirement is to prevent a party, if he suffers the mistake or oversight to pass without notice, from taking advantage of it when it is too late to make the correction, and to compel him to disclose the grounds of his objection at the time he makes his protest.

* * * Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character, to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated. *Burgess* v. *Converse*, 2 Curt. 223.

In the case of *Arthur* v. *Morgan*, 112 U. S. 495, the court stated:

* * * A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure. * * *

To the same effect see *United States* v. *Rice & Co.*, 257 U. S. 536.

These principles have been so repeatedly declared by this court that citations are unnecessary.

It is also well established that a protest serves not only as a notice to the collector of alleged errors in his classification, but serves as well for the purpose of an appeal to the United States Customs Court in case the collector declines or fails to make his decision conform to the protest. *James Akeroyd & Son* v. *United States*, 19 C. C. P. A. (Customs) 249, T. D. 45341. A protest is, in the Customs Court, the importer's pleading. *U. Fujita & Co. et al.* v. *United States*, 26 C. C. P. A. (Customs) 63, T. D. 49611.

The foregoing principles applicable to protests are not in any way in controversy, but the parties are in disagreement as to the application of some of those principles to the facts in the case at bar.

It is appellant's contention that where a paragraph enumerates several commodities more or less related, all dutiable at the same rate, it is sufficient in a protest to make a claim under that paragraph without any specific enumeration of the commodities named therein.

The Government, on the other hand, contends that the merchandise is described in the protest as metacresol, and that, since metacresol is *eo nomine* designated in paragraph 27 (b), the protest should be held to be limited to that commodity; that the attention of the collector was not directed to any other commodity named in the paragraph, and that he had the right to believe from the protest that the only claim therein was that the involved merchandise should be classified under paragraph 27 (b) as being "Metacresol having a purity of 90 per centum or more," as specified therein; that neither the collector nor the Government was advised until after the trial had begun, and the period for amendment of the protest had elapsed, what the real claim of appellant was, viz, that the merchandise consisted of cresylic acid, enumerated in said paragraph 27 (b).

Both parties cite a number of cases of this and other courts in support of their respective contentions, but none of such cases involve a state of facts in all particulars such as is here present. It is obvious that the sufficiency of a protest must depend upon the application of the principles applied to the facts in each case, and therefore very little assistance can be had from precedents involving the sufficiency of protests where the facts differ from the facts in the case at bar.

The question, simply stated, is, did the protest complaining of the assessment of duties by the collector upon the merchandise described in the protest as "Meta Cresol," and claiming it to be dutiable under paragraph 27 (b) at 20 per centum ad valorem and 3½¢ per pound, reasonably inform the collector that appellant claimed the merchandise to be cresylic acid enumerated in said paragraph, and can it be reasonably said that such claim was in the mind of appellant at the time of filing the protest, no amendment of the protest having been made or sought.

We think this question must be answered in the negative. Nowhere does the protest indicate that appellant was of the view, at the time of filing the protest, that the merchandise consisted, not of metacresol, but of cresylic acid. Neither is there anything in the record indicating that appellant at any time before its chemist's analysis of a sample of the merchandise, the date of which does not appear, knew or believed that the merchandise consisted of cresylic acid.

On the contrary the merchandise was invoiced to appellant as metacresol, it was so described in appellant's consumption entry, and in his protest. Moreover, Exhibit 1, introduced by appellant, being the record of the analysis made by one of appellant's chemists, describes the merchandise as "M. P. Cresol," which, we assume, means meta-paracresol, and which, according to appellant's own testimony, is not cresylic acid, although the result of the analysis would indicate that the merchandise was not meta-paracresol, but cresylic acid.

We think the collector had a right to believe, on the facts before him, that the only claim of appellant was that the merchandise was metacresol, 90 per centum pure; and, having before him the report of the Government chemist that the merchandise was meta-paracresol, with only 50 per centum metacresol, and meta-paracresol not being provided for in paragraph 27 (b), the collector properly affirmed his original liquidation and was not called upon to make further investigation as to whether the merchandise fell under any of the other *eo nomine* designations in paragraph 27 (b).

Had the protest contained alternative claims, among them a claim that the merchandise consisted of cresylic acid, the collector might well have had another analysis made to ascertain whether the merchandise contained any orthocresol, and if it did he would presumably have reliquidated the entry in accordance with such claim.

Moreover, when the case came before the Customs Court there was nothing to indicate that appellant would claim that the involved merchandise consisted of cresylic acid, for there was nothing in appellant's pleading (its protest) raising that issue. Indeed, upon the opening of the trial, appellant's counsel stated:

*Mr. Schwartz:* If the court please, the merchandise in this case is meta-paracresol, which is claimed by the importer to be dutiable under paragraph 27 (b), which provides for cresylic acid, which, on being subjected to distillation yields in the portion distilling below 215 degrees Centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate.

This statement is in itself confusing, for according to the testimony on behalf of appellant, meta-paracresol is not cresylic acid, for cresylic acid is a mixture of metacresol, paracresol, and orthocresol.

Upon the record before us, if the merchandise was in fact meta-paracresol, as stated by appellant's counsel and found by the collector,

then it was properly classified by the collector for it would seem that meta-paracresol is not provided for in paragraph 27 (b).

In the testimony of the witness David Weisberg, one of appellant's chemists, we find the following:

Judge BROWN. Now, the Tariff Act for some reason apparently mentions three substances, metacresol, orthocresol, and paracresol.

The WITNESS. Yes, sir.

Judge BROWN. What did you mean when you spoke of metacresol?

The WITNESS. That means meta and paracresol; that means a mixture. That term is commonly used.

Judge SULLIVAN. They are all three individual substances?

The WITNESS. They are individual substances which are mixed but not chemically combined in the cresylic acid.

It will be observed that the witness states that the term "metacresol" includes paracresol, which obviously could not be true in a tariff sense for paragraph 27 (b) distinguishes between the two cresols, but this testimony corroborates the view that appellant intended to include only the product metacresol in its protest.

We have hereinbefore referred to the citations of both parties in support of their respective contentions and stated that such citations are of little assistance in determining the question before us because the sufficiency of a protest depends upon the facts in a particular case.

There is, however, one case decided by this court, and not cited by either party in this appeal, which holds that it is not sufficient, under all circumstances, merely to cite the paragraph under which a claim is made, although the commodities named in the paragraph are all free of duty. We refer to the case of *Larzelere & Co.* v. *United States*, 8 Ct. Cust. Appeals 64, T. D. 37198. In that case there were three protests involved; two of them claimed the merchandise to be free of duty under paragraph 479 of the tariff act of 1913 as a crude artificial abrasive; the third protest claimed the merchandise to be free of duty under the same paragraph as "corundum or as crude artificial abrasive." Said paragraph 479 read as follows:

479. Emery ore and corundum, and crude artificial abrasives, not specially provided for.

The court held that the involved merchandise was in fact corundum.

The court further held that the two protests merely describing the article as a "crude artificial abrasive" were insufficient to embrace corundum, although both substances were named in the same paragraph and both were free of duty. In its opinion the court stated:

The infirmity in the present protests is that while both of them point out the paragraph under which a more general claim might perhaps be made, they go further and direct the attention of the collector to a distinct claim, namely, that this importation is dutiable as a crude artificial abrasive. This excludes the idea that it is dutiable as corundum. When the collector examines that importation and finds that the article is not in fact a crude artificial abrasive, the protest is

sufficiently answered, and there is no reason for reliquidation. The essential, minute description of these goods is that they constitute a crude artificial abrasive. The claim that they are dutiable as corundum in the form in which this importation appears is not only not included in this protest *but is wholly inconsistent therewith.*

To paraphrase the language above quoted and apply it to the facts in the case at bar, we can say: The infirmity in the present protest is that while it points out the paragraph under which a more general claim might perhaps be made, it goes further and directs the attention of the collector to a distinct claim, namely that this importation is dutiable as metacresol under paragraph 27 (b). This excludes the idea that it is dutiable as cresylic acid. When the collector examines that importation and finds that the article is not in fact metacresol 90 per centum pure, the protest is sufficiently answered, and there is no reason for reliquidation. The essential, minute description of these goods is that they constitute metacresol. The claim that they are dutiable as cresylic acid in the form in which this importation appears is not only not included in this protest but is wholly inconsistent therewith.

The case last cited reviews the cases of *Carter* v. *United States,* 1 Ct. Cust. Appls. 64, T. D. 31033, and *Bowling Green Storage Co.* v. *United States,* 3 Ct. Cust. Appls. 309, T. D. 32588, relied upon by appellant here in support of its contention that it is sufficient as a general rule to make a general claim of dutiability under a paragraph, without more, and distinguishes such cases from the case there before the court.

Appellant makes a further contention that it was the duty of the collector in the first instance, by reason of the exception contained in paragraph 27 (a) (2), to determine whether the involved merchandise was dutiable under any of the provisions of paragraph 27 (b), and therefore he could not have been misled by the provisions of appellant's protest. The answer is that the collector did presumably determine this when he accepted the chemist's report that the merchandise consisted of meta-paracresol, which was not provided for in paragraph 27 (b). If it was meta-paracresol it could not, according to the record before us, be any of the substances enumerated in said paragraph 27 (b).

Appellant cites the case of *Lichtenstein* v. *United States,* 1 Ct. Cust. Appls. 79, T. D. 31105, as holding that in a protest it is not essential to "hit the bird in the eye." The full statement in which this expression occurs in said case is: "It is not essential that the importer shall in the protest 'hit the bird in the eye.' But it is essential that he state his claim with such reasonable clearness and certainty as to acquaint the collector with the real ground of his complaint. * * *"
We may observe also that while it is not essential that a protest "hit

the bird in the eye," it is essential that the protest be at least aimed at the bird.

Appellant might have made an alternative claim that the involved merchandise consisted of cresylic acid dutiable under paragraph 27 (b), but this it did not do, and we cannot agree with its counsel that its protest should be construed as if alternative claims had been made for each of the substances named in paragraph 27 (b). If alternative claims had been made the attention of the collector would have been directed to other substances included in paragraph 27 (b), but as drawn the protest directed his attention only to metacresol.

We deem it proper to observe in this connection that paragraph 27 (a) (1) provides for more than 75 products, all bearing the same rate of duty. The first product named is "Acetanilide not suitable for medicinal use." Let us assume that an importation is made of a product described in the invoice as "acetanilide," entered under that description and so described in a protest; could it be reasonably argued that the protest embraced each of the more than 75 products named in the paragraph under a general claim that it was dutiable under paragraph 27 (a) (1)? We think not.

Appellant also relies upon our decision in the case of *Kilburn Mill* v. *United States*, 26 C. C. P. A. (Customs) 54, T. D. 49598, in support of its contention that its protest was sufficient. We there said:

Under the circumstances of this case, all of the essential facts relative to the protestant's claims *appearing either in the protests or in official documents before the collector*, we think the protests were sufficient to inform the collector of the importer's objections to his decisions. There was nothing for the collector to do, upon the filing of the protests, but to re-examine his liquidations of the entries and ascertain the *relative values of the several products* resulting from the manipulation of the imported merchandise at the time of their separation, and the amount of the refund to which the importer was entitled, from facts officially before him.

The distinction between the last-cited case and the case at bar is at once apparent. In the instant case there was nothing in the protest or in any official document to advise the collector that appellant made any claim other than that the merchandise consisted of metacresol 90 per centum pure. To that extent it was a valid protest, and perhaps the better practice would have been for the Customs Court to have overruled the protest rather than to have dismissed it. However, upon the trial appellant made no contention that the merchandise consisted of metacresol 90 per centum pure, and clearly abandoned the only claim that was properly made in the protest, so we cannot say that the dismissal of the protest by the Customs Court was improper.

Nothing in this opinion should be construed as holding that where a paragraph of the tariff act includes two or more articles bearing the same rate of duty, it is necessary in all cases in a protest to specify each of such articles relied upon in order that the protest be held

valid. There are many cases, some of which have been cited by appellant, where, by reason of the nature of the merchandise involved, or particular provisions of a tariff paragraph, it would be sufficient to make a general claim under such paragraph. The test always is,. Does the protest, reasonably construed, distinctly and specifically set forth the reasons for the importer's objection to the liquidation by the collector?

We merely hold in this case that the protest was not sufficient to entitle appellant to claim that the involved merchandise was cresylic acid and dutiable under paragraph 27 (b), which was the only claim made by appellant on the trial of the cause before the Customs Court.

The judgment appealed from is *affirmed*.